OPINION
{¶ 1} Appellant Russell A. Parry (hereinafter "appellant") appeals the decision of the Canton Municipal Court, Stark County, which entered a monetary judgment against him and Velo International, Ltd., ("Velo") in favor of Plaintiff-Appellee Sliman's Printing, Inc. ("Sliman"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant was the president of Velo, a distribution company selling floor matting products. Velo was organized as a limited liability company ("LLC"). In early 2003, Velo contacted Appellee Sliman Printing for the production of approximately 20,000 promotional brochures. After receiving some artwork proposals from a marketing firm, Sliman vice-president Judith Sliman-Humphries sent Velo a revised quote, which was accepted by Velo marketing director Jamie Smart. At Humphries' request, Smart faxed Sliman a purchase order signed by Smart. On March 26, 2003, approximately 1100 brochures were delivered to Velo. At Velo's request, certain minor errors were corrected, and the remaining brochures were shipped between April 1, 2003 and May 7, 2003.
 {¶ 3} In the ensuing months, Humphries began making telephone and fax contact with Velo to ensure payment to Sliman. Finally, in early August 2003, Humphries met with appellant and Ryan Berry, the comptroller for Velo. (Smart, who had been Humphries' main contact person at Velo, had by then left the company.) At this meeting, which Humphries claimed involved no mention by appellant of Velo's mounting financial problems, appellant assured her that Sliman would receive full payment.
 {¶ 4} After the passage of a few more weeks, payment was still lacking, Humphries unsuccessfully tried to get a response from Velo via e-mail. Humphries thereafter sent a representative to Velo's offices at 6659 Frank Road, Jackson Township. The business was discovered closed. Humphries then received a letter from Velo, signed by appellant, stating that Velo had ceased operations and was selling its assets to the Teknor Apex Company. Humphries tried to make telephone contact with appellant, but could not get an answer. However, Humphries asked a relative to investigate Velo's "800" telephone number by calling and requesting a catalogue. The relative did so, and received a copy sent from the aforesaid Frank Road address. Humphries also discovered that Velo's website was still in operation.
 {¶ 5} On October 24, 2003, Sliman filed a complaint in Canton Municipal Court, seeking a judgment for the unpaid bill amount of $12,471.86. Sliman named as defendants Velo, Appellant Parry, CF One, Inc. ("C F"), and John Doe. Appellant filed an answer on November 14, 2003. The matter proceeded to a bench trial on February 24, 2004, following which the court issued a judgment entry, dated February 25, 2004. The court therein concluded, inter alia, as follows:
 {¶ 6} "Russell A. Parry was unable to explain to the Court why `Velo International' continued to distribute the brochure printed by Plaintiff from the `Frank Avenue' address after October 3, 2003.
 {¶ 7} "The Court found the testimony of Judith Sliman Humphries to be credible. The Court did not find the testimony of Russell A. Parry to be credible. The Court finds that Russell A. Parry personally guaranteed the payment of the second invoice to Plaintiff on August 1, 2003." Judgment Entry at 3-4.
 {¶ 8} The court thereupon granted judgment against Velo and appellant in the amount of $12, 471.86. The court furthermore dismissed Sliman's claim against C F, the statutory agent.
 {¶ 9} On March 18, 2004, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:
 {¶ 10} "I. The trial court erred in granting judgment against Russell A. Parry in light of the pleadings, the evidence submitted and the law to be applied in determining the extent of the personal liability of an officer or member of an Ohio Limited Liability Company.
 {¶ 11} "II. The trial court judgment is against the manifest weight of the evidence.
 I., II. {¶ 12} In his First and Second Assignments of Error, appellant contends the trial court improperly granted judgment against him personally in light of the evidence presented. We agree.
 {¶ 13} "Under Ohio law, as elsewhere, an LLC is neither a corporation nor a partnership, as those concepts are commonly understood. Instead, an LLC is a hybrid in that it is a form of legal entity that has attributes of both a corporation and a partnership but is not formally characterized as either one." Inre ICLNDS Notes Acquisition, LLC (N.D. Ohio 2001), 259 B.R. 289,292. Pursuant to R.C. 1705.48(B), "[n]either the members of the limited liability company nor any managers of the limited liability company are personally liable to satisfy any judgment, decree, or order of a court for, or are personally liable to satisfy in any other manner, a debt, obligation, or liability of the company solely by reason of being a member or manager of the limited liability company."
 {¶ 14} Sliman's response to the above statutory authority is two-fold. First, Sliman presents an agency theory, i.e., it urges that an agent who discloses neither the existence of the agency nor the identity of the principal is personally liable in contractual dealings with third parties. See, e.g., U.S. PumiceCo. v. G-S Supply Co., Inc., (June 1, 2001), Montgomery App. No. 18617, citing 1 Mechem, The Law of Agency (2 Ed. 1914) 1039-1041, Section 1410. In this vein, Sliman points out testimony by Humphries that she was unaware of Velo's status as an LLC until she received appellant's letter of October 7, 2003, stating Velo had ceased operations. See Tr. at 15.
 {¶ 15} Secondly, appellee responds that Velo's status as an LLC should be penetrated under the doctrine of piercing the corporate veil. See, e.g, Belvedere Condominium v. R.E. RoarkCo., Inc. (1993), 67 Ohio St.3d 274.
 {¶ 16} However, under the facts and circumstances of this case, neither of Sliman's theories would support the trial court's holding in the absence of compliance with the Statute of Frauds. Ohio law codifies the statute in part in R.C. 1335.05, which provides in pertinent part that: "[n]o action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
 {¶ 17} The transcript in the case sub judice reveals that Humphries and appellant were the sole testifying witnesses. Appellant testified in pertinent part as follows:
 {¶ 18} "Q. During the relevant period, was any other entity, to your knowledge, did any other entity or person order printing from Sliman Printing other than Velo International, Ltd?
 {¶ 19} "A. No, sir.
 {¶ 20} "Q. Did you personally undertake to pay the printing bill at Sliman Printery?
 {¶ 21} "A. No, sir, not personally.
 {¶ 22} "Q. Okay, at any time did you indicate on behalf of Velo International, Ltd. that the company would undertake to pay them for the printing work that they did?
 {¶ 23} "A. We — Velo International, Ltd. intended to pay all of its creditors so when we — when we issued purchase orders or any other transaction we occurred (sic) upon, our intent was to pay our creditors, absolutely." Tr. at 31.
 {¶ 24} Certainly, the trial court judge was in a better position than this Court to gauge appellant's credibility. However, we note the cross-examination testimony of Humphries, Sliman's sole witness, included the following:
 {¶ 25} "Q. Okay. In your lawsuit, you have seen the complaint in your lawsuit, have you not?
 {¶ 26} "A. Yes, I think I saw it, yes.
 {¶ 27} "Q. In that complaint you, I think, named Russell Parry as a party Defendant, did you not?
 {¶ 28} "A. I believe so, yes.
 {¶ 29} "Q. And what was your — what was the basis for your claiming that Russell Parry should be individually responsible for the printing that your company had done?
 {¶ 30} "A. Well, that was really done on the advice of my counsel — is that okay to say —
 {¶ 31} "Q. Well, did you have anything in writing from him to indicate that he was going to be responsible for this printing bill for —
 {¶ 32} "A. Well, as head of a company, I guess I thought he should be responsible for it, yes.
 {¶ 33} "Q. So that's the basis to your feeling about who should be responsible, you don't have anything in writing signed by Mr. Parry, saying I will be responsible for this bill?
 {¶ 34} "A. Well, all I have in writing is from his representative Jamie Smart saying to proceed with the order, and the purchase order of which, you know, it belongs to him as president — that's you know —
 {¶ 35} "Q. This purchase order belongs to him as president.
 {¶ 36} "A. The purchase order is from his company, of which he is president.
 {¶ 37} :Q. Okay, so how does — I'm not sure why you're saying he should be responsible for his company's debts. Was there anything that he said or wrote on a piece of paper that says, I, Russell Parry, shall be responsible for this bill?
 {¶ 38} "A. He did not write anything, no.
 {¶ 39} "Q. Okay. Did he ever say to you, I will be responsible for this bill?
 {¶ 40} "A. Well, in the meeting that we had, he certainly made me — he alluded to the fact that he would pay the bill.
 {¶ 41} "Q. He or his company?
 {¶ 42} "A. His company." Tr. at 20-21.
 {¶ 43} This Court has often reiterated that we neither weigh the evidence nor judge the credibility of the witnesses in analyzing manifest weight arguments in civil cases. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. However, in the case sub judice, based on the dearth of testimony or documentation to support that appellant had guaranteed payment of Velo's bill in compliance with the Statute of Frauds, we find the judgment against appellant to be reversible error.
 {¶ 44} Appellant's First and Second Assignments of Error are sustained.
 {¶ 45} For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby affirmed in part and reversed in part. The portion of the judgment entry of February 25, 2004 granting judgment against Appellant Russell A. Parry in the amount of $12,471.86 is hereby vacated.
Wise, J., Farmer, P.J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed in part, and reversed and vacated in part.
Costs to be split evenly between Appellant Parry and Appellee Sliman.