[Cite as *Sutter v. Henkle*, 2016-Ohio-1143.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

LANA SUTTER,

     PLAINTIFF-APPELLEE,               CASE NO.  10-15-14

     v.

STACEY HENKLE,                     O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Celina Municipal Court
Trial Court No. 15CVI00410

**Judgment Affirmed**

Date of Decision:   March 21, 2016

APPEARANCES:

    *Shaun A. Putman* **for Appellant**

    *Lana Sutter*, **Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Stacey Henkle ("Henkle"), appeals the August 19, 2015 judgment of the Celina Municipal Court, Small Claims Division awarding plaintiff-appellee, Lana Sutter ("Sutter"), $1,356.50 in damages. We affirm.

{¶2} On April 4, 2014, Sutter entered into a contract with Henkle Construction, LLC for a "mother in law suite" addition to Sutter's home located in Mercer County, Ohio. (Doc. No. 1, Ex. C). This case stems from Sutter's allegation that she entered into an oral agreement with Henkle during the construction of the mother-in-law suite. Sutter alleges that Henkle orally agreed to pay half of the cost of concrete steps leading to the rear-patio door of the addition. Steps were not specifically mentioned in the written contract for the addition.

{¶3} On June 3, 2015, Sutter, pro se, filed a small-claims complaint in the Celina Municipal Court asking for a judgment in the amount of $1,296.50, plus the $60.00 filing fee, for a total of $1,356.50 against Henkle. (Doc. No. 1). On June 12, 2015, Henkle filed his answer. (Doc. No. 5). That same day, Henkle filed motions for a more definitive statement and for reasonable attorney fees in defense of frivolous conduct. (Doc. Nos. 6, 7). On June 15, 2015, the trial court granted Henkle's motion for a more definitive statement and ordered Sutter to file an

amended complaint. (Doc. No. 9). Sutter filed her amended complaint on June 26, 2015. (Doc. No. 11).

{¶4} The trial court held a small-claims trial on August 13, 2015. (Aug. 13, 2015 Tr. at 1). At trial, the court concluded that Henkle's motion for attorney fees was premature. (Aug. 13, 2015 Tr. at 104). On August 19, 2015, the trial court awarded Sutter $1,356.50 in damages. (Doc. No. 12).

{¶5} On September 18, 2015, Henkle filed his notice of appeal. (Doc. No. 13). He raises three assignments of error for our review. For ease of our discussion, we will address them together.

### Assignment of Error No. I

**The Trial Court's Determination that the Alleged Contract is Supported by Consideration was Contrary to Law and Against the Manifest Weight of the Evidence.**

### Assignment of Error No. II

**The Trial Court's Determination that There was a "Meeting of the Minds" to Support the Alleged Contract was Contrary to Law and Against the Manifest Weight of the Evidence.**

### Assignment of Error No. III

**The Trial Court's Determination that Defendant Stacey Henkle Personally Entered Into a Contract with the Plaintiff was Contrary to Law and Against the Manifest Weight of the Evidence.**

{¶6} In his first and second assignments of error, Henkle argues that the trial court's conclusion that there was a valid and enforceable contract between

Henkle and Sutter is against the manifest weight of the evidence. Specifically, Henkle argues that the trial court's conclusions that there was consideration and a "meeting of the minds" are against the manifest weight of the evidence. Henkle argues in his third assignment of error that the trial court's conclusion that Henkle contracted with Sutter in his individual capacity is against the manifest weight of the evidence.

{¶7} The parties do not dispute that they entered a valid and enforceable written contract for the construction of the mother-in-law-suite addition to Sutter's home. During the construction of the mother-in-law-suite addition, a dispute arose regarding a means of access to and from the rear-patio door of the addition. Sutter desired concrete steps to be installed from the rear-patio door of the mother-in-law-suite addition to the side door of the existing house. Henkle does not install concrete steps. The issues in this case are whether Henkle orally agreed to pay half of the cost of the concrete steps to complete the mother-in-law-suite addition and whether he orally agreed to do so in his individual capacity. Therefore, before us are the issues of whether the parties entered a valid and enforceable settlement agreement and whether Henkle agreed to be personally liable for that settlement agreement.

{¶8} "A settlement agreement is viewed as a particularized form of a contract." *Brotherwood v. Gonzalez*, 3d Dist. Mercer No. 10-06-33, 2007-Ohio-

3340, ¶ 11, citing *Noroski v. Fallet*, 2 Ohio St.3d 77, 79 (1982). "It is a contract designed to terminate a claim by preventing or ending litigation, and such agreements are valid and enforceable by either party." *Id.*, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996). "To be enforceable as a binding contract, a settlement agreement requires no more formality than any other type of contract. It need not necessarily be signed, as even oral settlement agreements may be enforceable." *B.W. Rogers Co. v. Wells Bros.*, 3d Dist. Shelby No. 17-11-25, 2012-Ohio-750, ¶ 27, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 15. "Therefore, the interpretation of a settlement agreement is governed by the law of contracts." *Brotherwood* at ¶ 11, citing *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679 (7th Dist.2000).

{¶9} "In order to establish a breach of a settlement agreement, the party alleging such breach must prove: '1) existence of the Settlement Agreement, 2) performance by the plaintiff, 3) breach by the defendant, 4) resulting damages or loss to the plaintiff.'" *Ohio Title Corp. v. Pingue*, 10th Dist. Franklin No. 10AP-1010, 2012-Ohio-1370, ¶ 26, quoting *Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. No. OT-09-026, 2010-Ohio-4714, ¶ 24. "The party seeking to enforce the settlement agreement bears the burden to prove, by a preponderance of the evidence, all of the elements of a claim for breach of a settlement agreement."

*Rondy, Inc. v. Goodyear Tire Rubber Co.*, 9th Dist. Summit No. 21608, 2004-Ohio-835, ¶ 7, citing *Cooper & Pachell v. Haslage*, 142 Ohio App.3d 704, 707 (9th Dist.2001), citing *AMF, Inc. v. Mravec*, 2 Ohio App.3d 29 (8th Dist.1981), paragraph two of the syllabus. "A preponderance of the evidence means the greater weight of the evidence." *Adams v. Disbennett*, 3d Dist. Marion No. 9-08-14, 2008-Ohio-5398, ¶ 14, citing *Steingass Mechanical Contracting, Inc. v. Warrensville Heights Bd. of Educ.*, 151 Ohio App.3d 321, 2003-Ohio-28, ¶ 30 (8th Dist.), citing *Travelers' Ins. Co. of Hartford Connecticut v. Gath*, 118 Ohio St. 257 (1928).

{¶10} "It is preferable that a settlement be memorialized in writing." *Kostelnik* at ¶ 15. "However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Id.* "Terms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.'" *Id.*, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85 (1st Dist.1947), paragraph one of the syllabus. "The elements necessary to form a contract include 'an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object of consideration.'" *B.W. Rogers Co.* at ¶ 26, quoting *Kostelnik* at ¶ 16. "Additionally, '[a] meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract.'" *Id.*, quoting *Kostelnik* at ¶ 16 and citing

*Episcopal Retirement Homes, Inc. v. Ohio Dep't. of Industrial Relations*, 61 Ohio St.3d 366, 369 (1991).

{¶11} "Our appellate review of a decision on the existence of a contract raises a 'mixed question of fact and law.'" *Id.* at ¶ 29, quoting *Hickman v. Cole*, 3d Dist. Hancock No. 5-98-30, 1999 WL 254379, *4 (Apr. 7, 1999).

> "'We accept the facts found by the trial court on some competent, credible evidence, but freely review application of the law to the facts. A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing credibility of the proffered testimony.'"

*Id.*, quoting *Cramer v. Bucher*, 3d Dist. Hancock No. 5-02-01, 2002-Ohio-3397, ¶ 9, quoting, *McSweeney v. Jackson*, 117 Ohio App.3d 623, 632 (4th Dist.1996). "[W]here there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Rulli v. Fan Co.*, 79 Ohio St.3d 374 (1997), syllabus.

{¶12} The parties dispute whether they orally entered into a valid and enforceable settlement agreement. In particular, Henkle argues that the parties did not execute a valid and enforceable settlement agreement because there is no

competent, credible evidence of consideration or a meeting of the minds as to the essential terms of the settlement agreement. Because Henkle challenges only the trial court's conclusion that there was consideration and a meeting of the minds as to the essential terms of the settlement agreement, we will address the trial court's factual findings and legal conclusions only as to those components.

{¶13} The trial court did not err in concluding that Henkle breached the settlement agreement because there is some competent, credible evidence that the parties entered a valid and enforceable settlement agreement—that is, there is some competent, credible evidence of consideration and a meeting of the minds as to the essential terms of the settlement agreement.

{¶14} With respect to the element of consideration, the trial court found that Henkle "made the promise to pay out of exasperation in order to bring his relationship to [Sutter] to a close[.]" (Doc. No. 12). Indeed, Sutter testified that Henkle

> came to [her] house to settle [their] ending bills that [she] owed him and while he was there, [she] discussed that [she] didn't have any steps leading out of [her] house. And upon that conversation, he agreed that, yes, [she] needed steps out the back of [her] house and he would pay for half because when [she] - - [she] wanted the steps to go all the way across, but there was a back door and a patio door.

-8-

> So [she] just said - - and that was all he was required to put a step to
>
> * * * So [she] said, well, if you don't want to pay for all of that
>
> across, [she will] pay for half of it. And so he said okay, he would.

(Aug. 13, 2015 Tr. at 11). Sutter testified that she assumed that her contract with Henkle would include steps for her to be able to access the rear patio door of the mother-in-law-suite addition. (*Id.* at 19, 20). However, she testified that Henkle "didn't think he needed to put steps out [her] back door." (*Id.* at 19). According to Sutter, she eventually convinced Henkle that "he needed to put steps out [her] back door." (*Id.*). She testified that she wanted concrete steps "all the way across," but Henkle "didn't want to pay for that all the way across." (*Id.* at 12). She testified that she compromised and offered to pay for half of the cost and that Henkle agreed. (*Id.* at 21). Sutter further testified that she keeps a journal and wrote in her journal that day, "'He also said he was willing to pay for half of the back steps.'" (*Id.* at 66). Sutter testified that she arranged for the steps to be installed after her conversation with Henkle. (*Id.* at 25).

{¶15} Sutter's daughter, Holli Enderud ("Enderud") also testified on behalf of Sutter. (*Id.* at 51). According to Enderud, she was present throughout the construction process and that she, Sutter, Enderud's husband, and Henkle, when they initially met to discuss the project, decided to discuss the steps "later on when it got time for that decision to be made." (*Id.* at 52-53). Enderud testified that,

when the project was finished, she was present when Sutter discussed the steps with Henkle. (*Id.* at 53). She testified that Sutter told Henkle that she wanted concrete steps. (*Id.*). According to Enderud, Henkle contacted "the man who poured approach [sic] to the garage, Mitch Scott," but Mitch Scott ("Scott") was not interested in constructing the concrete steps. (*Id.* at 54). Enderud testified that Sutter and the Enderuds previously contracted with Mercer County Concrete and offered to contact that company to see if it would construct the steps. (*Id.*). According to Enderud, Henkle told Sutter to contact Mercer County Concrete. (*Id.*). She testified that Sutter obtained a price quote from Mercer County Concrete for the steps to extend "all the way across" as Sutter desired, presented it to Henkle, and Sutter offered to pay half of the project because "if you divide out the length of the patio door and the side door, it's more than half. There's only a little bit in between the two doors and the ends that's extra." (*Id.*).

{¶16} Henkle testified to the tension between the parties, as well as to the conflict between Sutter and Henkle's subcontractors throughout the project. (*Id.* at 73-75, 81-84). Henkle testified about a second written contract between Henkle Construction, LLC and Sutter for a basement-finishing project. (*Id.* at 83). He testified that he told Sutter, regarding that second written contract, that he did not have time to complete the project, but that she repeatedly contacted him about it. (*Id.* at 83-84, 88-89). Henkle further testified that he went to Sutter's home on

several occasions to repair things that she claimed were defective or not working and did not charge her for his services. (*Id.* at 85-86, 88). Henkle testified, "I have bent over backwards, and I told her that several times. I've done everything in my power to try to keep you happy, and it's not possible. And as for every other subcontractor that worked there, had nothing but problems." (*Id.* at 87). Henkle testified that it is "[v]ery safe" to say that he is done doing any work for Sutter. (*Id.* at 89).

{¶17} Regarding the concrete steps, Henkle testified that he knew Sutter wanted the concrete steps but that he did not agree to pay for half of the cost of the steps. (*Id.* at 78, 91). According to Henkle, Sutter asked him "what we was [sic] going to do with the steps." (*Id.* at 96). Henkle testified that he responded to Sutter that he thought that she was going to build a deck, but that Sutter informed him that she wanted the concrete steps instead. (*Id.*). Henkle testified, "I said you can have concrete steps. I got [Scott] out to give her a price on the concrete steps," but Scott did not want to construct the steps. (*Id.* at 96-97). According to Henkle, he informed Sutter that concrete steps would be expensive, and she asked him what he had "figured for the steps back there," to which Henkle responded to Sutter that he did not have "anything figured for the steps back there from the git-go [sic]." (*Id.* at 97). Henkle testified that "[she] said, well, go ahead, and we'll get the price on it. And that's how it was left." (*Id.*).

-11-

{¶18} Based on the testimony of Sutter, Enderud, and Henkle, the trial court's factual findings regarding the element of consideration are supported by some competent, credible evidence. We also agree with the trial court's legal conclusion that there was sufficient particularity of the element of consideration. "Consideration may consist either in a detriment to the promisee or a benefit to the promisor." *Nilavar v. Osborn*, 137 Ohio App.3d 469, 485 (2d Dist.2000), citing *Brads v. First Baptist Church*, 89 Ohio App.3d 328, 336 (2d Dist.1993). It is not necessary that the consideration given by each party to a contract be expressed, rather, the consideration "may be inferred from the terms and obvious import of the contract." *Harvest Land Co-Op, Inc. v. Hora*, 2d Dist. Montgomery No. 25068, 2012-Ohio-5915, ¶ 14, quoting 17 Ohio Jurisprudence 3d, Contracts, Section 46, at 478 (1980). Once consideration is established, courts are not required to "inquire into the adequacy of the consideration." *Gallon v. Scouten*, 6th Dist. Lucas No. L-06-1168, 2007-Ohio-2957, ¶ 18, citing *Ford v. Tandy Transp., Inc.*, 86 Ohio App.3d 364, 384 (4th Dist.1993). Henkle's testimony illustrates the strained relationship between the parties and his desire to end his relationship with Sutter and her family. It can be inferred from the circumstances surrounding the agreement that the consideration given is the implied promise to bring the original contract, and the parties' relationship, to an end. *See Nilvar* at 485-486 (concluding that the natural inference of consideration in an oral contract

is the cooperation of each participant). Indeed, a settlement agreement is a type of contract intended to *terminate* a claim by preventing litigation. *See Brotherwood*, 2007-Ohio-3340, at ¶ 11. In consideration of his promise to pay half of the concrete steps, Henkle receives the benefit of Sutter's implied promise to end the dispute with him regarding the mother-in-law-suite contract. In fact, Sutter testified that Henkle came to her house to "settle" their final bills when the issue of the concrete steps was discussed. (Aug. 13, 2015 Tr. at 11). Therefore, there is some competent, credible evidence of the element of consideration.

{¶19} There is also sufficient particularity as to the parties' meeting of the minds as to the essential terms of the settlement agreement. "Expressions of assent are generally sufficient to show a meeting of the minds." *Rudd v. Online Resources, Inc.*, 2d Dist. Montgomery No. 17500, 1999 WL 397351, *5 (June 18, 1999). "In a contract other than for the sale of goods, the 'essential terms' of the contract generally are the parties to the contract and its subject matter." *Nilvar* at 487, citing *Nilvar v. Osborn*, 127 Ohio App.3d 1, 13 (2d Dist.1993), citing 17 Ohio Jurisprudence 3d at 446. "The terms of a contract are sufficiently certain or definite where they '"provide a basis for determining the existence of a breach and for giving an appropriate remedy."'" *Id.*, quoting *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169 (8th Dist.1983), quoting 1 Restatement of the Law 2d, Contracts, Section 33, at 92 (1981). The parties testified that the contract for the

mother-in-law-suite addition was complete but for a means of accessing the rear patio door. Henkle testified that he told Sutter that she could have concrete steps and that he went as far as contacting Scott for a price quote. For Scott to be able to provide a price quote, it was necessary for Scott to learn of the specifications for the steps. The evidence in the record indicates that Henkle was present when Scott provided the estimate and indicated that he was not interested in the project. Accordingly, there is some competent, credible evidence in the record that Henkle knew the specific details of the concrete steps that Sutter wanted installed.

{¶20} Furthermore, there is some competent, credible evidence in the record that Henkle knew the approximate cost of the steps—that is, Henkle told Sutter that the steps would be expensive, and Henkle knew the cost of Scott's estimate.

{¶21} Lastly, Henkle testified that he "left" the topic of the concrete steps with Sutter when she indicated to Henkle to "go ahead" and that she would obtain another price quote. (Aug. 13, 2015 Tr. at 97). Despite Henkle's testimony that he did not agree to pay for half of the concrete steps, Henkle did not testify that he protested or confirmed with Sutter that he would not be involved in any manner with the concrete steps after Sutter told him to go ahead and that she would seek another price quote. Therefore, there is some competent, credible evidence of

sufficient particularity as to the parties' meeting of the minds as to the essential terms of the settlement agreement.

{¶22} Because the record contains some competent, credible evidence of consideration and a meeting of the minds as to the essential terms of the settlement agreement, there is some competent, credible evidence that Sutter proved by a preponderance of the evidence that a settlement agreement existed. Therefore, the trial court correctly concluded that a settlement agreement existed and that Henkle breached the settlement agreement.

{¶23} Nonetheless, Henkle argues in his third assignment of error that the trial court erred in holding him personally liable for the breach of the settlement agreement. "'Under Ohio law, as elsewhere, an LLC is neither a corporation nor a partnership, as those concepts are commonly understood. Instead, an LLC is a hybrid in that it is a form of legal entity that has attributes of both a corporation and a partnership but is not formally characterized as either one.'" *Dover Phila Heating & Cooling, Inc. v. SJS Restaurants, Ltd.*, 185 Ohio App.3d 107, 2009-Ohio-6187, ¶ 18 (5th Dist.), quoting *In re Iclnds Notes Acquisition, L.L.C.*, 259 B.R. 289, 292 (Bankr.N.D.Ohio 2001). Under R.C. 1705.48(B), "'[n]either the members of the limited liability company nor any managers of the limited liability company are personally liable to satisfy any judgment, decree, or order of a court for, or are personally liable to satisfy in any other manner, a debt, obligation, or

liability of the company solely by reason of being a member or manager of the limited liability company.'" *Id.*, quoting *Sliman's Printing, Inc. v. Velo Internatl.*, 5th Dist. Stark No. 2004CA00095, 2005-Ohio-173, ¶ 13, quoting R.C. 1705.48(B).

**{¶24}** However, "'if a corporate officer executes an agreement in a way that indicates personal liability, then that officer is personally liable regardless of his intention.'" *Hubbard Family Trust v. TNT Land Holdings, LLC*, 4th Dist. Pike No. 12CA833, 2014-Ohio-772, ¶ 38, quoting *Spicer v. James*, 21 Ohio App.3d 222, 223 (2d Dist.1985). "Whether an officer or agent is personally liable under the contract depends upon 'the form of the promise and the form of the signature.'" *Id.*, quoting *Spicer* at 223.

**{¶25}** Henkle is a member of Henkle Construction, LLC. He argues that the trial court's conclusion that he is personally responsible for the debt is against the manifest weight of the evidence because, if any agreement was made, it was made in his capacity as a member of Henkle Construction, LLC, not in his individual capacity. We disagree. There is some competent, credible evidence that Henkle personally entered into the settlement agreement with Sutter.

**{¶26}** In *Dover Phila Heating & Cooling, Inc.*, Dover Phila Heating and Cooling, Inc. sued SJS Restaurants, Ltd., a limited liability company, and a member of SJS Restaurants, Ltd., Sheila Sherwood, in her individual capacity, for

work performed on a restaurant. *Dover Phila Heating & Cooling, Inc.* at ¶ 3-6. The First District Court of Appeals concluded that Shelia Sherwood could not be held personally liable for the debt even though David Kinsey, the owner and operator of Dover Phila Heating and Cooling, Inc., testified that he sued Sheila Sherwood "because she was the person he dealt with in contracting for the repairs to the restaurants" since Kinsey also "agreed that he had no basis to believe that Sheila Sherwood was personally responsible for the debts, rather than SJS Restaurants, Ltd." *Id.* at ¶ 19. Similar to *Dover Phila Heating & Cooling, Inc.*, Sutter testified at trial that she sued Henkle personally because he was the person with whom she discussed the concrete steps. (Aug. 13, 2015 Tr. at 37). However, unlike the facts of *Dover Phila Heating & Cooling, Inc.*, there is no evidence in the record that Sutter did not have a basis to believe that Henkle is personally responsible for the debt for the concrete steps. Rather, there is testimony that Henkle promised to pay half of the cost of the concrete steps. Therefore, the trial court's conclusion that Henkle, himself, is personally liable under the settlement agreement is not against the manifest weight of the evidence.

{¶27} Accordingly, the trial court's judgment awarding Sutter $1,356.50 in damages is supported by some competent, credible evidence and is not against the manifest weight of the evidence.

{¶28} Henkle's assignments of error are overruled.

**{¶29}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**ROGERS, J., concurs as to Assn. Nos. 1 & 2, dissents as to Assn. No. 3.**

**/jlr**