[Cite as *Denny v. Breawick, L.L.C.*, 2019-Ohio-2066.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

CHERYL DENNY,

     PLAINTIFF-APPELLEE,

     CASE NO. 5-18-12

     v.

BREAWICK, LLC, ET AL.,

     O P I N I O N

     DEFENDANTS-APPELLANTS.

---

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2014CV446**

**Judgment Affirmed**

**Date of Decision:  May 28, 2019**

---

APPEARANCES:

    *Howard Elliott* **for Appellant**

    *William E. Clark* **for Appellee**

**WILLAMOWSKI, J.**

{**¶1**} Defendants-appellants Breawick, LLC ("Breawick"); Buren Trace Development, LLC ("Buren Trace"); and Timothy Hunsaker ("Hunsaker") appeal the judgment of the Hancock County Court of Common Pleas, alleging that the trial court should not have allowed the corporate veil to be pierced. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{**¶2**} Hunsaker is a building contractor who is the sole member of two limited liability companies: Breawick and Buren Trace. September 16 Tr. 14, 29. Hunsaker did construction work through Breawick in the Buren Trace Development. *Id*. at 39. March 1 Tr. 38. On February 24, 2013, Cheryl Denny ("Denny") entered into a contract for the construction of a house. Doc. 1, Ex. A. Denny had nine meetings with Hunsaker before she signed this contract. September 16 Tr. 74. Through these meetings, Denny and Hunsaker worked out the exact specifications of the house that was to be built. Doc. 1, Ex. A. Hunsaker signed the contract on behalf of Breawick and agreed to furnish all labor and materials for this project. Doc. 1, Ex. A. The contract price for the house was $397,400.00. September 16 Tr. 26. Construction on the house began on April 26, 2013. *Id*. at 87.

{**¶3**} During the course of construction, a number of disagreements arose between Hunsaker and Denny over the work that he was performing. *Id*. at 83, 86. Denny testified that she never agreed to any alterations to the original building

specifications. *Id*. at 88. However, she said that Hunsaker deviated from the plans, in one instance placing a kitchen wall where an open space was supposed to be. *Id*. at 88. Denny further testified that she was charged for this work even though she did not approve this change. *Id*. at 88-89.

{¶4} Denny also stated that Hunsaker made requests for additional payments for "extras" that amounted to around $20,000.00. *Id*. at 85. Denny testified that Hunsaker would threaten to stop working on the house if his requests for these payments were not met. *Id*. at 86, 91. The change orders and "extras" were not submitted to Denny in writing and were not approved by Denny. *Id*. at 85. Denny testified that she felt "under pressure" to pay for the "extras" because Hunsaker was behind on the construction schedule and she wanted to end that particular fight. *Id*. at 86.

{¶5} Denny also testified that several liens were placed on the house during the course of the construction by several suppliers. September 16 Tr. 95. Denny further testified that she had to pay one lien, though she also said that Hunsaker was able to address another lien without her intervention. *Id*. at 95. At one point, Denny was made a party to a legal action that was filed by a supplier against Hunsaker. *Id*. Denny testified that she was released from this action but did have to pay some attorney's fees. *Id*. at 96. She could not pay for these various expenses with funds from her bank loan and had to draw on other lines of credit to cover these costs. *Id*. at 96.

**{¶6}** Hunsaker claimed that one of Denny's friends, Clinton Johnson ("Johnson"), functioned as a superintendent of sorts during the course of this project. March 3 Tr. 67. Hunsaker had previously built a house in Buren Trace for Johnson, who was knowledgeable about electrical; plumbing; and heating, ventilation and air conditioning work. *Id*. at 67. March 1 Tr. 24, 52. Johnson offered to help Denny in the process of building this house and was involved in overseeing various aspects of this project. March 1 Tr. 24. Hunsaker testified that Johnson was very involved with subcontractors and even directed some of their work. March 3 Tr. 10, 69-70. He further blamed Johnson's work on the house for some of the construction defects.[1] *Id*. at 91.

**{¶7}** Hunsaker claimed that he was at the construction site on every workday from April to December of 2013, though Denny claimed that Hunsaker worked much less frequently on the house. March 1 Tr. 21, 71. September 16 Tr. 90. On December 30, 2013, Hunsaker quit working on the house. *Id*. at 34. At that time, the house was not completed, but Denny had paid a total of $341,696.27 to the defendants. Doc. 100. *See Id*. at 47. At trial, Hunsaker said that the house was ninety to ninety-five percent complete at the time that he quit. *Id*. Claiming he was

---

[1] On December 1, 2014, the defendants filed a third party complaint against Johnson, arguing that Johnson should be liable to Breawick if a judgment is entered against Breawick. Doc. 28. Johnson filed a motion for summary judgment on December 4, 2015. Doc. 57. On January 12, 2016, the trial court granted Johnson's motion for summary judgment. Doc. 65.

not getting paid, Hunsaker filed for a mechanic's lien on Denny's house on January 22, 2014.[2] Doc. 1.

{¶8} On January 5, 2014, Denny compiled a list of contract specifications that had not been finished. September 16 Tr. 99. At this point, the house was not completed to the point that Denny could move into it. *Id*. at 92. She then hired S.E. Hile General Contracting, LLC, to continue working on the house. *Id*. Doc. 100. Subsequently, Denny had to spend $46,057.48 to make the house habitable, though these improvements still did not complete the house to the point where it satisfied the original contract specifications. *Id*. at 82.

{¶9} Denny filed a complaint against Breawick, Buren Trace, and Hunsaker on September 17, 2014. Doc. 1. The complaint alleged that the defendants violated the Ohio Consumer Sales Practices Act ("CSPA"); were in breach of contract; converted funds; committed fraud; benefitted from unjust enrichment; and violated provisions of the Home Construction Service Law ("HCSL"). Doc. 1. Denny also alleged that Buren Trace and Breawick were Hunsaker's alter egos and that the trial court should pierce the corporate veil in order to hold Hunsaker personally liable for damages. Doc. 1.

{¶10} At trial, an expert in home construction—Steven E. Hile ("Hile")— testified about the costs of finishing the Denny's home. September 29 Tr. 9, 12.

---

[2] Hunsaker claimed that Denny owed him $71,212.39 for work that he performed before he quit working on the house. Doc. 100. On October 20, 2017, in its judgment entry, the trial court declared that this lien was unenforceable and void as the defendants could not prove that Denny owed this amount. Doc. 100.

During his testimony, Hile outlined all of the deficiencies in the construction of the home that had to be rectified and the building specifications that had yet to be completed. *Id*. at 20-78. Altogether, he estimated that the total cost of getting the home to meet the contract specifications would be $125,216.00 more than what Denny paid Hunsaker. *Id*. at 82. He testified that Denny had already spent $46,057.00 to make some repairs in order to make the house habitable but that more repairs had to be made. *Id*.

{¶11} At trial, Denny's husband introduced a video of the premises that documented many of the construction flaws in the house. March 1 Tr. 16. There were issues with the gutters, downspouts, rough grade, drainage system, sidewalk, vinyl siding, ceiling, foyer, crown molding, walls, and trim. September 29 Tr. 20, 24, 31, 40, 57, 58, 72, 74, 75, 78. In particular, Denny mentioned the problem of water leaks in various parts of the house, though Hunsaker claimed that the basement windows were not leaking. March 1 Tr. 74.

{¶12} In its October 20, 2017 judgment entry, the trial court denied Denny's claims for fraud, unjust enrichment, conversion, and violations of the CSPA. Doc. 100. The trial court, however, found that the defendants were in breach of their contract with Denny. Doc. 100. The trial court also found that the defendants had violated provisions of the HCSL by charging the owner for excess costs without approval in violation of R.C. 4722.03(A)(3)(b) and by knowingly failing to perform construction in a "workmanlike manner" in violation of R.C. 4722.03(A)(3)(d).

Doc. 100. The trial court sanctioned the defendants for failing to comply with the HCSL and awarded Denny reasonable attorney's fees pursuant to R.C. 4722.08(D)(2). Doc. 100. The trial court also found the Buren Trace and Breawick were alter egos of Hunsaker. Doc. 100. The trial court then determined that the violations of the HCSL were illegal acts that justified piercing the corporate veil. Doc. 100. The trial court then held Hunsaker personally liable pursuant to the doctrine of piercing the corporate veil. Doc. 100.

*Assignment of Error*

{¶13} Appellants filed their notice of appeal on September 20, 2018. On appeal, appellants raise the following assignment of error:

> **The trial court erred when it was considering whether a single man LLC was the alter ego of its owner such that the so called corporate veil should be pierced by applying the standards of a corporation and the operating requirements of corporations to the single man LLC so as to impose personal liability to the owner for the LLC's activities.**

Appellants argue that Buren Trace and Breawick were not Hunsaker's alter egos and that the violations of the HCSL were not the types of "illegal acts" that justify piercing the corporate veil.

*Legal Standard*

{¶14} "Under Ohio law, as elsewhere, an LLC is neither a corporation nor a partnership, as those concepts are commonly understood. Instead, an LLC is a hybrid in that it is a form of legal entity that has attributes of both a corporation and

a partnership but is not formally characterized as either one." *Sutter v. Henkle*, 3d Dist. Mercer No. 10-15-14, 2016-Ohio-1143, ¶ 24, quoting *In re ICLNDS Notes Acquisition, LLC*, 259 B.R. 289, 292 (Bankr. N.D. Ohio 2001). Under R.C. 1705.48(B),

> **No member, manager, or officer of a limited liability company is personally liable to satisfy any judgment, decree, or order of a court for, or is personally liable to satisfy in any other manner, a debt, obligation, or liability of the company solely by reason of being a member, manager, or officer of the limited liability company.**

R.C. 1705.48(B). However, a member of a limited liability company may be held personally liable "if the plaintiff demonstrates that the behavior of the members merits disregarding, or piercing, the entity's limited liability structure." *Huttenbauer Land Co., L.L.C. v. Harley Riley, Ltd.*, 1st Dist. Hamilton No. C-110842, 2012-Ohio-4585, ¶ 15.

{¶15} "'Piercing the corporate veil' is '[t]he judicial act of imposing personal liability on otherwise immune corporate officers, directors, or shareholders for the corporation's wrongful acts.'" *Minno v. Pro-Fab, Inc.*, 121 Ohio St.3d 464, 2009-Ohio-1247, 905 N.E.2d 613, ¶ 8, quoting Black's Law Dictionary (8th Ed.2004) 1184. A trial court may apply the doctrine of piercing the corporate veil to limited liability companies. *Huttenbauer* at ¶ 15; *Acquisition Servs., Inc. v. Zeller*, 2d Dist. Montgomery No. 25486, 2013-Ohio-3455, ¶ 45; *DiBlasio v. Sinclair*, 7th Dist. Mahoning No. 08-MA-23, 2012-Ohio-5848, ¶ 26; *Auto Sale, L.L.C. v. Am. Auto*

*Credit, L.L.C.*, 8th Dist. Cuyahoga No. 102438, 2015-Ohio-4763, ¶ 21; *RCO Internatl. Corp. v. Clevenger*, 180 Ohio App.3d 211, 214, 2008-Ohio-6823, 904 N.E.2d 941, ¶ 4, 9-12 (10th Dist.).

{¶16} The Supreme Court of Ohio has set forth the elements that must be present in order for a trial court to apply the doctrine of piercing the corporate veil:

> **(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.**

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos. Inc.*, 67 Ohio St.3d 274, 275, 617 N.E.2d 1075 (1993).

{¶17} The first prong of *Belvedere* has been referred to as the "alter ego doctrine * * *." *Siva v. 1138 LLC*, 10th Dist. Franklin No. 06AP-959, 2007-Ohio-4667, ¶ 10.

> **A corporation is an individual's alter ego when 'the individual and the corporation are fundamentally indistinguishable.' *Belvedere* at 288. 'Some of the factors used to determine if this standard has been met include (1) whether corporate formalities were observed, (2) whether corporate records were kept, (3) whether corporate funds were commingled with personal funds, and (4) whether corporate property was used for a personal purpose.' *Pottschmidt v. Klosterman*, 169 Ohio App.3d 824, 2006-Ohio-6964, 865 N.E.2d 111, ¶ 37 (9th Dist.).**

*My Father's House No. 1, v. McCardle*, 2013-Ohio-420, 986 N.E.2d 1081, ¶ 28 (3d Dist.).

{¶18} In *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, the Supreme Court of Ohio clarified the requirements of second prong of the *Belvedere* test. *Dombroski* at ¶ 1. Under *Dombroski*, "the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Id.* at ¶ 29. "[U]njust or inequitable conduct" in the absence of "fraud, an illegal act, or an unlawful act" is not sufficient to satisfy this prong. *Id.* at ¶ 2, 27. Under the third prong, the party alleging injury must provide proof that damages resulted from the control and wrongdoing found to be present under the first and second prongs of the *Belvedere* test. *Snapp v. Castlebrook Builders, Inc.*, 2014-Ohio-163, 7 N.E.3d 574, ¶ 74 (3d Dist.).

{¶19} "This test focuses on the extent of the shareholder's control of the corporation and whether the shareholder misused the control so as to commit specific egregious acts that injured the plaintiff." *Dombroski* at ¶ 18. "All three prongs of the test must be met for the court to pierce the corporate veil." *My Father's House No. 1* at ¶ 27. "[L]imited shareholder liability is the rule * * *, and piercing the corporate veil in this manner remains a 'rare exception,' to be applied only 'in the case of fraud or certain other exceptional circumstances.'" *Dombroski* at ¶ 17, quoting *Dole Food Co. v. Patrickson*, 123 S.Ct. 1655, 538 U.S. 468, 475, 155 L.Ed.2d 643 (2003). Courts are to pierce the corporate veil when "it would be

unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Belvedere* at 287.

**{¶20}** When determining whether it was proper for the trial court to pierce the corporate veil, "[e]ach case is to be decided sui generis, on its own facts." *Yo-Can, Inc. v. The Yogurt Exchange, Inc.*, 149 Ohio App.3d 513, 2002-Ohio-5194, 778 N.E.2d 80, ¶ 45 (7th Dist.); *Kuempel Serv., Inc. v. Zofko*, 109 Ohio App.3d 591, 672 N.E.2d 1026 (1st Dist. 1996); *State ex rel. Petro v. Mercomp, Inc.*, 167 Ohio App.3d 64, 2006-Ohio-2729, 853 N.E.2d 1193 (8th Dist.). Since "piercing the corporate veil is primarily a matter for the trier of fact," an appellate court will not reverse a decision to pierce the corporate veil if some competent, credible evidence supports this determination. *Snapp* at ¶ 85, quoting *State ex rel. DeWine v. S & R Recycling, Inc.*, 195 Ohio App.3d 744, 2011-Ohio-3371, 961 N.E.2d 1153, ¶ 29 (7th Dist.). *Bates v. Rose*, 6th Dist. Wood No. WD-16-068, 2017-Ohio-7977, ¶ 26; *Longo Constr., Inc. v. ASAP Tech. Serv., Inc.*, 140 Ohio App.3d 665, 748 N.E.2d 1164 (8th Dist. 2000); *Clinical Components, Inc. v. Leffler Industries, Inc.*, 9th Dist. No. 95CA0085, 1997 WL 28246, *3 (Jan. 22, 1997).

*Legal Analysis*

**{¶21}** We turn now to applying the *Belvedere* test to the facts of this case. As to the first prong, Hunsaker was the sole member of Breawick and Buren Trace. September 16 Tr. 20, 29. At trial, Hunsaker testified that he drew funds from

Breawick's bank account to pay for his personal expenses.[3] *Id.* at 20. He also testified that Buren Trace did not have a separate bank account. *Id.* at 19. The bank records referenced at trial also indicated that Hunsaker had used the Breawick account for what appeared to be personal expenses, such as lunches at various restaurants, though Hunsaker claimed that these were business expenses. *Id.* at 20. The trial court further found that no corporate formalities were observed, noting that "Hunsaker did not keep corporate records, and could not identify when or if meeting minutes took place." Doc. 100. Thus, there was evidence to support the trial court's finding that these limited liability companies were Hunsaker's alter egos and had "no separate mind, will, or existence of [their] own." *Belvedere, supra*, at 288. Doc. 100.

{¶22} As to the second prong, the trial court found that the defendants violated two provisions of the HCSL. Doc. 100. First, the trial court found that Hunsaker "failed to perform the home construction service in a workmanlike manner" in violation of R.C. 4722.03(A)(3)(d). Doc. 100. At trial, Hunsaker admitted that he failed to complete this construction project. September 16 Tr. 47. Further, Hile also gave extensive testimony that described the numerous

---

[3] The record does not indicate that Hunsaker took a regular salary or a set amount of wages from Breawick's account. Tr. 21. Rather, he would ask his wife what their total personal expenses were each month and would draw enough from the Breawick account to cover these personal expenses. Tr. 21. He would write a check for the total amount of his personal expenses from the Breawick account and the give this check to his wife, who would deposit this amount into her personal checking account and then disperse these funds to cover their personal expenses. Tr. 21. As Hunsaker did not have a separate personal checking account and drew on the Breawick account to cover his monthly personal expenses, the trial court determined that the Breawick account was essentially used to pay for Hunsaker's personal expenses. Doc. 100.

construction deficiencies present in the portions of the project that Hunsaker had completed. September 29 at 20-82. These deficiencies included issues with the gutters, downspouts, rough grade, drainage system, sidewalk, vinyl siding, ceiling, foyer, crown molding, walls, and trim. *Id.* at 20, 24, 31, 40, 57, 58, 72, 74, 75, 78. Denny also testified that Hunsaker did not work regularly and made unapproved alterations to house specifications. September 16 Tr. 87, 90, 99. She further discussed the issues with the portions of the house that had been completed. November 1 Tr. 9.

{¶23} Second, the trial court found that the defendants charged for excess costs without the approval of the owner in violation of R.C. 4722.03(A)(3)(b). Doc. 100. At trial, Hunsaker admitted that he requested additional payments from Denny for "extras." March 3 Tr. 128. He further admitted that he told Denny that he would stop working on the house if she did not pay for these extras. *Id.* at 129. Denny testified that she made several of these payments because Hunsaker stated that he was going to stop working on the construction project if she did not pay. September 16 Tr. 86.

{¶24} Under *Dombroski*, a trial court must find that "fraud, an illegal act, or an unlawful act" occurred in order to pierce the corporate veil. *Dombroski* at ¶ 2. While the trial court found that the defendants did not commit fraud, the trial court did determine that Hunsaker violated two provisions of the HCSL and found that these "illegal acts" were "so egregious as to satisfy the standard set forth in

Case No. 5-18-12

*Dombroski*." Doc. 100. Thus, the trial court did not merely find that Hunsaker engaged in "unjust or inequitable" conduct but determined that Hunsaker committed two "illegal acts." *Dombroski* at ¶ 13. Further, in the absence of further guidance from the Supreme Court of Ohio, we find no reason to displace the trial court's finding that these "illegal acts," under the facts of this specific case, constituted the "egregious acts" that the doctrine of piercing the corporate veil exists to remedy. *Id*. at ¶ 18.

{¶25} As to the third prong, the plaintiff showed that Hunsaker's illegal acts were the cause of the damages. At trial, Hile testified that Denny had to spend $46,057.00 to make the house habitable and that Denny would have to spend roughly $125,216.00 to get the house completed according to the original contract specifications. September 29 Tr. 82. The plaintiff also showed that she had to pay several liens in order to continue work and had to pay extras as the result of Hunsaker's actions. Denny testified that she paid several of the requested additional payments in order to ensure that work on the house continued. In conclusion, some competent, credible evidence substantiates each prong of the *Belvedere* test.[4] Thus,

[4] We note that Hunsaker was sued personally for his own actions in addition to being sued as the alter ego of Breawick and Buren Trace. Doc. 1. The complaint alleged that Hunsaker violated provisions of the HCSL. Doc. 1. The trial focused on Hunsaker's actions in failing to perform under the contract and in violating provisions of the HCSL. Hunsaker testified that he was at the construction site every day performing the work on the house. March 1 Tr. 71. Further, the trial court found that Hunsaker committed the violations of the HCSL. Doc. 100. While Denny argued that Hunsaker's actions were an appropriate basis on which to pierce the corporate veil, the documents she filed and the testimony she gave did not allege that Hunsaker was liable *solely* on the basis of being the alter ego of Breawick and Buren Trace. Doc. 1. On the facts of this case, even if Hunsaker were to prevail in his sole assignment of error, he would not avoid being personally liable in this action where he personally performed the work and committed the illegal acts that formed the basis of this complaint. Under R.C. 1705.48(D), a member of a limited liability company can be

-14-

we conclude that the trial court did not err in piercing the corporate veil in order to hold Hunsaker personally liable for the damages caused by his illegal acts.

**{¶26}** On appeal, Hunsaker also argues that the trial court could not pierce Breawick's corporate veil to reach Buren Trace. However, in its judgment entry, the trial court pierced the corporate veil only to reach Hunsaker personally. Doc. 100. The judgment entry does not indicate that the trial court pierced the corporate veil to reach Buren Trace. Doc. 100. Thus, this argument does not address the facts present in this particular case. For these reasons, appellants' first assignment of error is overruled.

*Conclusion*

**{¶27}** Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgment of Hancock County Court of Common Pleas is affirmed.

***Judgment Affirmed***

---

held personally liable for his or her "own actions or omissions." R.C. 1705.48(D). *See Snapp v. Castlebrook Builders*, 2014-Ohio-163, 7 N.E.3d 574, fn. 5 (3d Dist.); *Stewart v. R.A. Eberts Co., Inc*., 4th Dist. Jackson No. 08CA10, 2009-Ohio-4418, ¶ 30 (holding "neither the corporate shield nor a shield of limited liability insulates a wrongdoer from liability for his or her own tortious acts.").