[Cite as *Essig v. Blank*, 2021-Ohio-2602.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| ELIZABETH ESSIG | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-9 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-82 |
| | : | |
| JAMES E. BLANK, D.D.S. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of July, 2021.

. . . . . . . . . . .

RICHARD E. MAYHALL, Atty. Reg. No. 0030017, 20 South Limestone Street, #120, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

DAVID J. HEINLEIN, Atty. Reg. No. 0040677, 140 East Town Street, Suite 1015, Columbus, Ohio 43215
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} James E. Blank appeals from the trial court's judgment entry in favor of plaintiff-appellee Elizabeth Essig following a bench trial on her breach-of-contract claim against him.

{¶ 2} Blank advances seven assignments of error. First, he contends the trial court erred in overruling his summary-judgment motion against Essig. Second, he claims the trial court erred in finding that the statute of frauds did not apply. Third, he argues that the trial court erred in finding promissory estoppel inapplicable. Fourth, he asserts that the trial court erred "in not providing analysis or reasoning" when overruling his summary-judgment motion. Fifth, he maintains that the trial court erred in finding that Essig satisfied her burden of proof at trial. Sixth, he contends the trial court erred "in not allowing any discussion of the merits, or lack thereof, regarding [a] putative dental malpractice claim" by Essig. Seventh, he claims the trial court erred in overruling his motion for a directed verdict at the close of Essig's case.

{¶ 3} The record reflects that Blank is a dentist. Blank was a personal friend of Essig's husband and to some extent Essig. Blank and the Essigs were acquainted through the local "Christian community," and the two men served together on the Emmanuel Christian Academy Board.

{¶ 4} In June 2017, Essig signed an informed-consent document, and Blank performed a dental procedure on her. Essig experienced an adverse outcome from the procedure. After she complained to Blank, he refunded her payment. Essig nevertheless contemplated filing a malpractice lawsuit against Blank. She sent him a "180-day letter" to extend the statute of limitation. Essig and her husband subsequently had several discussions with Blank about reaching a settlement. According to Essig, Blank orally

agreed to pay her $75,000. For his part, Blank acknowledged negotiating with Essig and her husband. He denied, however, that the parties orally had agreed to his payment of any specific amount of money. Blank claimed no oral contract existed. After Blank failed to pay Essig $75,000, she filed the present lawsuit alleging breach of an oral contract and seeking enforcement of the settlement agreement. The parties subsequently filed competing summary-judgment motions. The trial court overruled both motions. It rejected Blank's argument that the statute of frauds applied. It also found a genuine issue of material fact as to whether the parties had entered into an enforceable oral contract. The matter proceeded to a December 10, 2020 bench trial at which the trial court heard testimony from Blank, Essig, and Essig's husband. Based on the testimony and exhibits presented, the trial court entered judgment in favor of Essig on January 12, 2021. The trial court's entry included detailed findings and analysis of the evidence presented. The trial court found that Essig had proven the existence of an enforceable oral contract and that neither the statute of frauds nor the doctrine of accord and satisfaction applied.

{¶ 5} In his first assignment of error, Blank contends the trial court erred in overruling his summary-judgment motion. He argues that he was entitled to judgment as a matter of law based on the statute of frauds. He advances three arguments in support. First, he claims the trial court erred in finding that the statute of frauds involved a question of fact rather than a question of law. Second, he asserts that the statute of frauds applied because the settlement agreement could not be performed within one year. Third, he maintains that the statute of frauds applied because the alleged oral agreement required him personally to satisfy a debt of his limited-liability company.

{¶ 6} In relevant part, the statute of frauds requires an agreement to be in writing

and to be signed by the party against whom enforcement is sought if it obligates the defendant "to answer for the debt * * * of another person" or if it is one "that is not to be performed within one year from the making thereof." *See* R.C. 1335.05. "[W]hether there has been compliance with the requirements of the [s]tatute of [f]rauds is a question of law where the facts are not in dispute." *Ruhe v. Hemmelgarn*, 2d Dist. Darke No. 96-CA-1423, 1997 WL 476687, *6 (Aug. 22, 1997). But whether the statute of frauds applies to bar an alleged oral agreement often requires resolving genuine issues of material fact. *See, e.g.*, *Willoughby Supply Co. v. Inghram*, 2015-Ohio-952, 30 N.E.3d 230, ¶ 22 (11th Dist.) ("The determination of whether an oral promise to answer for another's debt exists, and is outside the Statute of Frauds, is a question of fact."); *Bond v. Phillips*, 6th Dist. Lucas No. L-10-1197, 2010-Ohio-5640, ¶ 15 ("Whether an agreement is an original undertaking, not subject to the statute of frauds, or collateral, requiring a writing, is generally a question of fact.").

{¶ 7} Blank contends the trial court erroneously treated the statute-of-frauds issue as involving a question of fact rather than a question of law when denying him summary judgment. It appears to us, however, that the trial court simply found no genuine issue of material fact and resolved the statute-of-frauds issue as a matter of law, finding that it did not apply. The trial court then found genuine issues of material fact about whether an oral settlement agreement existed. (July 9, 2020 Entry at 1.) Despite its summary-judgment ruling, the trial court revisited the statute-of-frauds issue again at trial after hearing all of the evidence. Based on the testimony presented, it explained why the parties' oral agreement was not required to be in writing. (January 12, 2021 Entry at 10-11.) We see no error in the trial court's treatment of the issue.

{¶ 8} Blank next argues that the statute of frauds did apply because the settlement agreement could not be performed within one year. He notes that the settlement was in lieu of Essig's pursuing a malpractice claim. That being so, he reasons: "[T]he statute of limitations was one year (plus an additional 180-day extension), so [the] oral agreement to pay could not have been completed within a year plus six months * * * inasmuch as the claimed oral agreement was contingent upon not bringing a suit within that 18 month period. There was no possibility in law or fact that full performance of both parties could have been completed within a year." (Appellant's brief at 7.)

{¶ 9} Upon review, we are unpersuaded by Blank's argument. The statute of frauds applies when an agreement cannot be performed within one year or when the parties did not intend an agreement to be performed within one year. *Olympic Holding Co. v. ACE Ltd.*, 122 Ohio St. 3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶ 48. Here Blank argues that the oral settlement agreement could not be "performed" prior to expiration of the underlying statute of limitation on a malpractice claim. We reject this argument for at least two independent reasons. First, Blank's argument about expiration of the statute of limitation is not supported by the record. Blank performed the procedure on Essig in June 2017. (Trial Tr. at 9.) Essig reported having problems the following day, and she reported complications that continued to bother her. (*Id.* at 11.) It appears likely then that the statute of limitation began to run at the time of the procedure or shortly thereafter. Essig testified that the oral agreement was reached in November 2018, roughly 17 months after her procedure. (Trial Tr. at 33, 40-41.) Consequently, it does not appear that Blank would have had to wait more than a year from the date of the settlement agreement for the statute of limitation to expire.

{¶ 10} Second, and more importantly, we see no reason why the parties would have needed to wait for the malpractice statute of limitation to expire for the oral agreement to be considered "performed." Essig agreed not to pursue a malpractice claim in exchange for $75,000 from Blank. Although Blank had to make financial arrangements to pay the money, the record does not reflect that it was impossible for him to pay her within one year of the settlement agreement. Even if the malpractice statute of limitation had not yet expired, the terms of the oral contract precluded Essig from filing suit. If she sued Blank anyway, he would have a cause of action for breach of contract. On the record before us, we see no significance in the expiration or non-expiration of the malpractice statute of limitation in relation to whether the oral agreement could have been performed within one year.

{¶ 11} In a final argument, Blank contends the oral agreement sought to hold him personally responsible for a debt of his limited-liability company. He cites the statute of frauds' requirement that an agreement must be in writing if it obligates a party "to answer for the debt * * * of another person." R.C. 1335.05.

{¶ 12} Once again, we find Blank's argument to be without merit. Essig's "180-day letter" appears to indicate that she was considering a lawsuit against Blank personally and against his dental practice.[1] Blank admitted that he and Essig had discussions about her settling the matter "directly with [him]." (Trial Tr. at 14.) For her part, Essig testified that Blank agreed to pay her $75,000 to settle the matter. (*Id.* at 24, 40-41.) Essig's husband also testified that the parties agreed to a $75,000 payment. (*Id.* at 47.) Therefore,

---

[1] The 180-day letter was directed to "Advanced Dentistry Springfield by James E. Blank, DDS, LLC aka James E. Blank, DDS, LLC dba Advanced Dentistry by James Blank *& James E. Blank, DDS.*" (Emphasis added.)

the record supports a finding that Blank entered into the settlement on his own behalf. In fact, the trial court explicitly found that the settlement was not for a debt of Blank's business. Based on the evidence presented, the trial court reasoned:

* * * The Court finds that Defendant's promise to pay $75,000 to plaintiff was not for the debt of his business entity. * * *

It could be argued that Defendant's promise was for the debt of his business entity because a settlement agreement would serve to protect his professional reputation and ultimately his business from exposure to a lawsuit. Securing this protection, however, was not the driving force behind his pursuit of a settlement agreement. On the contrary, it was merely a residual benefit of his primary motivation which was supporting and compensating Plaintiff because of their friendship and his honorable principles.

Plaintiff was much more than a patient to Defendant. Defendant was friends with Plaintiff and her husband. They were all part of the local Christian community. Mr. Essig and Defendant served together on the Emmanuel Christian Academy Board. Mr. Essig testified that he and Defendant were more than acquaintances, and characterized their relationship as "friends." Defendant testified that he wanted to support Plaintiff. Defendant even texted, "I pray for your health and healing almost daily . . . ." Defendant engaged in settlement negotiations because of particular concern for her and his virtuous nature, not because his business owed her anything. The fact that he was contemplating paying out of his

business savings is merely evidence of his logistical concerns and does not negate the overwhelming evidence that his promise to Plaintiff was to answer for his own debt.

Because Defendant's promise was not to answer for the debt of his business entity, but for his personal debt, the statute of frauds does not apply, and therefore it does not render the oral contract unenforceable.

(January 12, 2021 Entry at 11.)

{¶ 13} In opposition to the trial court's conclusion, Blank cites *Sliman's Printing, Inc. v. Velo, Internatl.*, 5th Dist. Stark No. 2004CA00095, 2005-Ohio-173. In *Sliman*, the Fifth District found that the president of a limited-liability company was not personally responsible for a debt of the company where the president did not sign a writing guaranteeing payment and only had promised that "his company" would pay the debt. *Id.* at ¶ 38, 42. *Sliman* is distinguishable. Unlike *Sliman*, the trial court found that the agreement between Essig and Blank did not involve a debt of the dental practice. Because Blank has not demonstrated error in that determination, *Sliman* has no applicability. The first assignment of error is overruled.

{¶ 14} In his second assignment of error, Blank again claims the trial court erred in finding that the statute of frauds did not apply to the parties' settlement agreement. In the body of his argument, he raises various issues. Blank first asserts that Essig gave informed consent to the dental procedure and that his refund of her payment constituted an accord and satisfaction. Under these circumstances, he suggests that he had no reason to agree to pay Essig anything. The trial court noted, however, that Blank had admitted participating in settlement negotiations, implicitly suggesting "that there was

some issue." (Trial Tr. at 26.) At best, Blank's assertions about informed consent and accord and satisfaction constitute circumstantial evidence going to the credibility of Essig's testimony, which was a matter for the trial court to consider in the exercise of its discretion.[2]

{¶ 15} Blank next cites two cases for the proposition that oral settlement agreements are not enforceable. In the first case, *First Merit Bank, N.A. v. Inks*, 138 Ohio St.3d 384, 2014-Ohio-789, 7 N.E.3d 1150, the Ohio Supreme Court held that "a party cannot assert an oral agreement pertaining to an interest in land in an effort to defeat a judgment entered pursuant to a written contract." *Id.* at ¶ 3. The rationale for this holding was that the statute of frauds precludes oral agreements involving an interest in land. *Id.* at ¶ 25-26. The dispute between Essig and Blank does not involve an interest in land. Therefore, the *Inks* decision has no applicability. The second case upon which Blank relies is *Hurd v. Wheeling & L.E.R. Co.*, 6 Ohio Dec. 545, 4 Ohio N.P. 404 (1897). In that common pleas court decision, the plaintiff in a wrongful-death action settled with the defendant railroad company without the knowledge or consent of plaintiff's attorneys. The attorneys subsequently sued the railroad company, seeking fees owed to them by the plaintiff. The common pleas court determined that the lawsuit actually sounded in tort for fraud rather than in contract. *Id.* at *4. The court also determined that a breach-of-contract claim would be barred by the statute of frauds because the railroad would be promising to pay the attorney-fee debt of the wrongful-death plaintiff. *Id.* In the present case, Blank

---

[2] Parenthetically, we note that the trial court addressed the accord-and-satisfaction issue and found the doctrine inapplicable. It reasoned: "The Court finds that there is no evidence that Plaintiff had reasonable notice that the refund was intended to be in full satisfaction of the impending medical/dental malpractice claim." (January 12, 2021 Entry at 9.)

has not demonstrated any error in the trial court's holding that the agreement between Essig and Blank did not involve a debt of the dental practice. As a result, *Hurd* is distinguishable.

{¶ 16} Finally, Blank contends the evidence presented at trial does not support a finding that he agreed to pay Essig $75,000. In particular, he takes issue with certain text messages that Essig used to help establish the existence of a contract. Blank argues that the text messages are not complete enough to constitute an enforceable written contract that overcomes the statute of frauds. We agree. But Essig did not rely on the text messages to establish the existence of a written contract. Rather, she relied on them as corroborating evidence that inferentially supported her claim of an oral contract. To the extent that Blank contends Essig's evidence—including her testimony and the text messages—failed to establish a meeting of the minds, we will address his argument under the fifth assignment of error, which challenges whether Essig sustained her burden of proof at trial. The second assignment of error is overruled.

{¶ 17} In his third assignment of error, Blank contends the trial court erred in finding "that promissory estoppel did not exist to preclude [Essig's] claim." In the body of his argument, however, he demonstrates that he does not actually believe promissory estoppel acted as a defense to *preclude* Essig's claim. Despite the wording of his assignment of error, he reasons that Essig herself cannot circumvent his statute-of-frauds defense by relying on the alternative theory of promissory estoppel to support her claim.

{¶ 18} Upon review, we find the foregoing issue to be moot. As a threshold matter, Essig did not allege promissory estoppel in her complaint, and the trial court did not address promissory estoppel in its judgment. In any event, Essig had no need to rely on

promissory estoppel. As explained elsewhere in this opinion, the trial court correctly found that an enforceable oral contract existed and that the statute of frauds did not apply. Because Essig can enforce the oral contract, we need not determine whether she could have used promissory estoppel to avoid the statute of frauds. The third assignment of error is overruled.

{¶ 19} In his fourth assignment of error, Blank asserts that the trial court erred "in not providing analysis or reasoning" when it overruled his summary-judgment motion addressing the statute of frauds.

{¶ 20} In overruling Blank's motion, the trial court concluded that "the statute of frauds does not appear to be applicable to the facts of this case and, as such, the purported agreement need not be in writing to be legally enforceable." (July 9, 2020 Entry.) Despite this ruling, the trial court considered the applicability of the statute of frauds again after hearing all of the evidence at trial. In its final judgment entry, the trial court provided findings and analysis regarding its determination that the statute of frauds did not apply. (January 12, 2021 Entry at 10-11.)

{¶ 21} Under these circumstances, we find Blank's assignment of error to be unpersuasive. It is questionable whether Blank even can challenge the trial court's summary-judgment ruling when the same issue was addressed at trial. In any event, the trial court had no obligation to issue findings of fact or conclusions of law in connection with its summary-judgment ruling. (Citations omitted.) *Huber v. Mues*, 2d Dist. Clark No. 2011-CA-75, 2012-Ohio-2540, ¶ 8. Moreover, the trial court did provide analysis of the statute-of-fraud issue in its final judgment. The fourth assignment of error is overruled.

{¶ 22} In his fifth assignment of error, Blank claims the trial court erred in finding

that Essig satisfied her burden of proof at trial. In particular, he challenges the trial court's decision to credit several "hand-picked" text messages as indicative of an oral contract while "blatantly ignor[ing] the fact that those hand-picked texts contained no confirmed acceptance of the specific dollar amount claimed by the plaintiff." Blank also faults the trial court for finding an oral agreement for him to pay $75,000 even though Essig never requested that amount in writing.

{¶ 23} "The 'standard of review following a civil bench trial is whether the trial court's judgment [was] against the manifest weight of the evidence.' " *Somerfield v. Budz*, 2d Dist. Montgomery No. 28437, 2019-Ohio-4804, ¶ 9, quoting *Downtime Rebuild, L.L.C. v. Trinity Logistics, Inc.,* 2019-Ohio-1869, 135 N.E.3d 1253, ¶ 12 (1st Dist.). "Accordingly, a judgment supported by competent, credible evidence should not be reversed on appeal." *Id.*, citing *Huntington Natl. Bank v. Miller*, 10th Dist. Franklin No. 14AP-586, 2016-Ohio-5860, ¶ 13, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). "An appellate court applying this standard 'is guided by a presumption that the [trial court's] findings of [fact were] correct.' " *Id.*, citing *Huntington Natl. Bank* at ¶ 13, citing *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "Typically, 'an appellate court should not disturb a trial court's findings of fact if the record contains competent, credible evidence to support those findings.' " *Parker v. Newmark Homes, Inc.*, 2d Dist. Montgomery No. 25686, 2013-Ohio-4402, ¶ 20, quoting *Johnson v. Albers*, 1st Dist. Hamilton No. C-110628, 2012-Ohio-1367, ¶ 17, citing *C.E. Morris* at syllabus.

{¶ 24} With the foregoing standards in mind, we see no error in the trial court's judgment. The preponderance of the competent, credible evidence supported a finding

that Essig and Blank entered into an oral settlement agreement obligating him to pay her $75,000. At trial, Essig and her husband both testified that Blank agreed to pay the $75,000. For his part, Blank admitted engaging in settlement negotiations but denied that he had agreed to pay any particular amount. However, Essig also admitted into evidence several text messages between the parties. These messages supported a reasonable inference that some amount previously had been agreed upon. Otherwise, Blank would not have been discussing how to get the money to pay Essig. Given Blank's denial that any amount had been agreed upon, the trial court reasonably accepted the amount to which Essig and her husband testified.

{¶ 25} The trial court thoroughly analyzed the evidence pertaining to an oral contract. It found all three witnesses credible (Essig, her husband, and Blank). Ultimately, it concluded that the text messages "tip[ped] the scale" in favor of Essig. Addressing those messages, the trial court reasoned:

> Plaintiff texted, "We agreed last December you said you had that amount you and your wife have agreed upon . . . ." Defendant did not respond to this text message by denying that he had agreed to the $75,000, but instead raised concerns about the deadline Plaintiff placed on the demand and from which account he would withdraw the funds. He texted, "The timeline is hard for me unless I take from family savings. I have about a third and am using business savings as I am able . . . ." He also texted, "I don't have the funds for that date . . . . If you are asking me to use retirement money I will see if I can." It would appear from these text messages that Defendant accepted the $75,000 offer and that any uncertainty pertained,

not to whether or not he would pay that amount, but only to his aforementioned logistical concerns, those being the source of funds and timeline for payment. As such, these exchanges tip the scales in favor of Plaintiff.

Plaintiff later texted, "I have grown weary and want to complete our good faith oral agreement." Defendant did not respond to this text message. The Court would think that, had there been no agreement, Defendant would have responded by denying the existence of one. His failure to respond could therefore be construed as an admission that an oral agreement had been reached. As such, this text message tips the scales in favor of Plaintiff.

Defendant responded to Plaintiff's demand by texting, "I have communicated these things to my attorney to create a brief document." Plaintiff then texted, "Please send me the document by the end of the day and the term so I can sign it and email it back to you today." Defendant responded, "I don't have the funds for that date . . . . Or any paperwork today." This text exchange could be construed in favor of Plaintiff as simply the parties wanting to reduce to writing their agreement. In other words, it appears that documents would be executed to memorialize a contract into which they already had entered. On the other hand, they could also be construed in favor of Defendant as his desire to have his attorney review terms and assent to them as a prerequisite to entering into an agreement. Accordingly, this text exchange does not tip the scales one way or the other.

Defendant texted to Mr. Essig, "I am not able to meet her demand

but will keep pressing with what I can, based on the update I gave you last time we talked. My attorney has the info." Mr. Essig responded, "Jim, I appreciate the progress you've made and you making contact with Betsy. John." This text exchange could be construed in favor of Defendant because it appears, on the surface, to be a rejection of Plaintiff's offer. Furthermore, had there already been an agreement made on November 15, 2018, Mr. Essig would most likely have responded to this text on December 2, 2018 by reminding Defendant of the same and holding him accountable to it. He did not. However, upon further review, it is more probable that Defendant was not rejecting Plaintiff's $75,000 offer, but rather expressing an inability to satisfy her demand that it be paid by a certain date. This interpretation is consistent with Defendant texting, ". . . will keep pressing with what I can . . . ." A reasonable interpretation of this text is that Defendant would continue "pressing" to gather the funds for Plaintiff by a certain date. As such this text exchange tips the scales in favor of Plaintiff.

The Court finds that the substance of all these text exchanges tips the scales in favor of Plaintiff.

(January 12, 2021 Entry at 6-7.)

**{¶ 26}** On appeal, Blank points out that the foregoing text messages omitted any "confirmed acceptance" of the $75,000 amount claimed by Essig. Although that is true, the text exchanges support a reasonable inference that the parties had agreed to some amount. The only witnesses to testify as to an agreement for a specific dollar amount were Essig and her husband. Therefore, the trial court reasonably accepted their

testimony that the oral agreement was for that amount. Blank also complains that Essig "hand-picked" a few text exchanges "out of hundreds of texts." Of course, Essig was free to present any evidence she desired. If Blank believed her texts were taken out of context or were not representative of the parties' entire exchange, he was free to cross-examine her on the matter or to present additional text messages himself. The fact that Essig only offered into evidence some text messages was not error. Finally, Blank points out Essig's admission that she knew the importance of written contracts based on her career in real estate. But the parties' agreement did not involve an interest in land and, therefore, did not need to be in writing for the reasons set forth elsewhere in this opinion. The fifth assignment of error is overruled.

{¶ 27} In his sixth assignment of error, Blank contends the trial court erred "in not allowing any discussion of the merits, or lack thereof, regarding [a] putative dental malpractice claim" by Essig.

{¶ 28} Blank reasons that the strength or weakness of any potential malpractice claim was relevant to whether he actually agreed to pay Essig $75,000. In essence, he argues that Essig had no conceivable malpractice claim because he did nothing wrong and, furthermore, that she had signed an informed consent form. Under these circumstances, Blank maintains that there was no reason why he, or any dentist, would have offered any settlement amount. Therefore, he asserts that the trial court erred in precluding him from examining Essig about her informed consent and allegations of malpractice.

{¶ 29} Upon review, we find Blank's argument to be unpersuasive. Limiting cross-examination is within a trial court's discretion based on the facts of a case. Restrictions

may be imposed due to various concerns, including "confusion of the issues" and the presentation of "repetitive testimony, or marginally relevant interrogation." (Citation omitted.) *Weiner v. Kwait*, 2d Dist. Montgomery No. 19289, 2003-Ohio-3409, ¶ 28

{¶ 30} Here Blank's attorney attempted to cross-examine Essig about her belief that Blank had committed malpractice. Essig's counsel objected on the basis of relevance. Blank's attorney then argued, as he does above, that without a factually viable malpractice claim there would have been no reason for him to agree to a settlement. At that point, Essig's counsel withdrew the objection, and the trial court agreed to allow "some limited questions on this." (Trial Tr. at 26.) In the pages of cross-examination that follow, we have not found any instances where the trial court precluded Blank's attorney from questioning Essig about her allegations of malpractice. In opposition to this conclusion, Blank's cites only discussion between counsel and the trial court that occurred *before* Essig withdrew her objection and the trial court allowed the questioning to proceed. Given that Essig withdrew the objection and questioning continued, we see no error. The sixth assignment of error is overruled.

{¶ 31} In his seventh assignment of error, Blank claims the trial court erred in overruling his motion for a directed verdict at the close of Essig's case. He argues that she failed to establish a meeting of the minds on the elements of a claim for breach of an oral contract. We reject this argument based on our resolution of Blank's fifth assignment of error, where we upheld the trial court's finding that Essig had proven breach of an oral contact by a preponderance of the evidence. Our analysis of the fifth assignment of error is equally applicable here. Because Essig presented evidence from which a trier of fact could conclude that Blank breached an oral contract, the trial court did not err in overruling

the directed-verdict motion. The seventh assignment of error is overruled.

{¶ 32} Having overruled each of Blank's assignments of error, we affirm the judgment of the Clark County Common Pleas Court.

. . . . . . . . . . . . .


DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Richard E. Mayhall
David J. Heinlein
Hon. Douglas M. Rastatter