[Cite as *Stiles v. Bugno*, 2024-Ohio-1262.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

RICHARD J. STILES,

Plaintiff-Appellee,

v.

ELIZABETH L. BUGNO,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0039**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2021 CV 00213

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges

---

**JUDGMENT:**
Affirmed.

---

*Atty. John N. Zomoida, Jr.*, Anthony & Zomoida, for Plaintiff-Appellee and

*Atty. Rick L. Brunner, Atty. Patrick M. Quinn*, Brunner Quinn, for Defendant-Appellant.

Dated:  March 28, 2024

**Robb, P.J.**

{¶1}  Appellant, Elizabeth L. Bugno, appeals the judgment finding her in breach of the parties' oral agreement and awarding Appellee, Richard J. Stiles, $16,750 in damages.

{¶2}  Appellant argues the trial court did not address her objections to the magistrate's decision; the parties' oral agreement violates the statute of frauds; the trial court erred by permitting Appellee's untimely pretrial statement; and the trial court erred by believing Stiles instead of her.  We affirm.

<u>Statement of the Facts and Case</u>

{¶3}  Stiles filed suit against Bugno, his mother, in February of 2021, asserting claims for breach of an oral contract and unjust enrichment.  Stiles asserts he paid off his mother's automobile loan at her request, and she promised to repay him.  She made several payments to Stiles before stopping in October of 2020.  (February 2021 Complaint.)

{¶4}  Bugno filed an answer in April of 2021.  (April 9, 2021 Answer.)  Following an unsuccessful mediation in January of 2022, Bugno's second attorney filed a notice of appearance. (February 11, 2022 Notice of Appearance.)  Four days later, her first named attorney moved to withdraw as counsel of record indicating a lack of client communication, which the trial court granted.  (February 16, 2022 Order.)

{¶5}  In May of 2022, Bugno moved the trial court for leave to file an amended answer and counterclaim.  The trial court denied this motion because the case had been pending for 16 months and the trial was set for June 22, 2022.  The court stated in its judgment, "all parties have been aware of the trial set for June 22, 2022 since January 31, 2022." (June 2, 2022 Judgment.)  The trial was subsequently reset to August 31, 2022.

{¶6}  Bugno filed her pretrial statement on August 24, 2022.  Stiles filed his pretrial statement on August 25, 2022.  On August 30, 2022, Bugno moved for sanctions because Stiles' pretrial statement was untimely.  It was filed one day late.  (August 30, 2022 Motion for Sanctions.)

{¶7}   Bugno also moved for the court to rule on and address her Civ.R. 12(D) defenses, contending the parties' alleged oral agreement was in violation of the statute of frauds.  (August 30, 2022 Motion.)

{¶8}   The bench trial to the magistrate was held August 31, 2022.   Three witnesses testified.  Stiles testified first.  He said his mother contacted him in April of 2020 and asked him to help her with the loan for the Suburban because she was in debt.  She said she was going to "pay him back as quickly as possible." (Trial Tr. 17.)  She also said "if I could help her, that she would reimburse me and make payments to me, and she did. She did do everything she said she would do in the beginning until September * * *."  (Trial Tr. 25.)  Stiles also testified:  "She said that she would make the same payments that she basically would have to pay to them [the lender] to me, and if she could pay it off quicker, then, you know, said,  * * * like she made me an extra payment in - -."  (Trial Tr. 27.)

{¶9}   Stiles also testified his mother said she would give him an extra $50 per month for interest.  He said she and her husband needed the money "so she wouldn't lose her vehicle."  Bugno had not told Stiles the loan was in her husband's name.  (Trial Tr. 27-28.)

{¶10}   Stiles paid $23,064.34 electronically from his Huntington Bank account to OneMain Financial and paid off the loan.  (Trial Tr. 29.)  Stiles introduced a screenshot image taken on his phone of the bank record showing payment in the amount of $23,064.34 to OneMain Financial on May 4, 2020 as an exhibit.  (Exhibit PX-2.)

{¶11}   Stiles stated he loaned her the money.  He did not gift the money to her. When asked about the manner of his mother's repayment, Stiles explained:  "She'd write out a check; she'd add an extra $50 to it; and she would write how many payments - - well, what the balance was on every check."  (Trial Tr. 33.)

{¶12}  He recounted the payments she made to him before she stopped paying. She made several payments in the amount of $1,050 and another time she paid him $2,050.  She would pay more because "she was trying to pay it off quicker."  (Trial Tr. 33.) The last payment she made to him was on October 5, 2020 in the amount of $1,050.  The check states on the memo or "For" line, "Owe $17,000 Suburban." The check is signed "Elizabeth Bugno."  (Exhibit PX-1.)

{¶13} In total, Bugno repaid Stiles $6,000 of the $23,064.34 he paid to OneMain at her request. She did not make additional payments after October of 2020. (Trial Tr. 34-35.) She stopped paying Stiles after he made sexual abuse allegations against her husband, his stepfather, on Facebook. (Trial Tr. 36.)

{¶14} Stiles also explained that he told Bugno he did not want interest from her on the loan. He said he was not considering the $50 per month as interest. Instead, Bugno volunteered the interest payment, and he said he is fine with it going toward the principal amount. (Trial Tr. 38, 70.)

{¶15} Joseph Romeo also testified. He is Stiles' friend. Romeo said he was with Stiles when his mother, Bugno, called Stiles. Stiles put the call on speaker phone. She was asking for financial help. Romeo recalled that Bugno said, "Alex [her other son] had taken out a high interest loan; the loan payments were killing her; and she was going to lose the vehicle if he didn't loan her the money. And he agreed to loan her the money." (Tr. 75-76.)

{¶16} Romeo recalled Bugno indicating she would get the money "back to him as quickly as she could. There was no set time or anything like that." When asked if there was a "set amount" for repayment, Romeo said "I don't recall exactly what it was." (Trial Tr. 76.)

{¶17} Elizabeth Bugno testified. She said she has been married to her husband for 38 years. She is a corrections officer at the penitentiary. She denies ever asking her son for a loan. (Trial Tr. 90-91.) Instead, she claims Stiles called her and put her on a three-wall call with a woman from the bank one day while she was driving to work. Bugno gave them permission to access the automobile loan account. Thereafter, Bugno had to end the phone call because she arrived at work and had to clock in. She explained: "And the next day – or the day after he let me know that he had paid the loan in full." She remembers thanking Stiles, and he said he "did it for her husband." Bugno then said she offered to pay him back plus $50 a month in interest. (Trial Tr. 92-93.)

{¶18} Bugno also testified that before Stiles repaid her loan, she was not paying $1,000 a month for the Suburban. She said she was paying much less. Bugno denies asking Stiles to pay off the loan for her. Bugno also denied that she and her husband

were about to "lose the business" explaining "[e]verything was paid." She also denied that she and her husband were going to "lose" this vehicle. (Trial Tr. 93-94.)

**{¶19}** After trial, the parties submitted proposed findings of fact and conclusions of law. The magistrate issued his decision. He overruled both of Bugno's pretrial motions. The magistrate found the statute of frauds did not apply. The magistrate also concluded the parties had an express oral agreement by which Bugno promised to repay Stiles $23,064.34 for paying off her high-interest rate car loan. The magistrate entered judgment in Stiles' favor in the amount of $16,750 plus interest. (December 8, 2022 Magistrate's Decision.)

**{¶20}** Bugno raised objections to the magistrate's decision, which the trial court overruled. The court adopted the magistrate's decision.[1] (February 9, 2023 Judgment.)

**{¶21}** Bugno appealed and moved for a stay of the court's judgment pending appeal. The parties entered an agreed order staying the judgment appealed. (March 10, 2023 Agreed Order.)

**{¶22}** Bugno raises four assignments of error.

<u>Trial Court's Compliance with Civ.R. 53 & Statute of Frauds</u>

**{¶23}** Bugno's first assignment of error asserts:

"The trial court erred in entering an order which did not deal or discuss any of the Defendant's unopposed objections to the Magistrate's Report which states in the final paragraph thereof by way of example: 'the Magistrate grants judgment in favor of the

---

[1]Although not raised, we note the trial court copied and pasted all eleven pages of the magistrate's decision in its judgment after stating it independently reviewed the decision and the objections. The court states it "adopts as its own" the magistrate's decision before reciting it in full. This court has held a court's act of copying and pasting the magistrate's decision after setting forth the necessary standard of review does not invalidate the finality of a judgment. *Ramos v. Khawli*, 181 Ohio App.3d 176, 2009-Ohio-798, 908 N.E.2d 495, ¶ 26 (7th Dist.), citing *Schmidli v. Schmidli,* 7th Dist. Belmont No. 02BE63, 2003-Ohio-3274, ¶ 16, and *Jarvis v. Witter,* 8th Dist. Cuyahoga No. 84128, 2004-Ohio-6628, ¶ 39. To the contrary, it demonstrates the court agrees with each statement of the magistrate. *Id.* The court's repetition of the words "magistrate's decision" in its decision here, as a result of the copying and pasting, does not affect the finality of the order as long as the court's judgment addresses the objections, takes one of the actions in Civ.R. 53(D)(4), and informs the parties the relief being afforded. *In re Dayton*, 7th Dist. Jefferson No. 02 JE 20, 2003-Ohio-1240, ¶ 9.

Plaintiff' but never mentions the Court is entering judgment and repeats that kind of error in several places."

**{¶24}** Bugno first argues the trial court did not address her objections. She contends the court simply copied and pasted the analysis of the magistrate's decision and made it its own.

**{¶25}** Civ.R. 53(D)(4)(d), "Action of Court on Magistrate's Decision and on Any Objections to Magistrate's Decision; Entry of Judgment or Interim Order by Court," states in part:

> Action on Objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

**{¶26}** While it does appear likely the trial court copied the majority of the magistrate's decision, before doing so, the trial court explicitly states:

> This matter was considered on the Magistrate's Decision filed on December 8, 2022 and Defendant's objections filed on December 21, 2022. Pursuant to Civ.R. 53(D)(4)(d), the court conducted an independent review of the objected to matters and has determined the Magistrate has properly determined the factual issues and appropriately applied the law. * * * Therefore, the court adopts as its own, the Magistrate's Decision filed on December 8, 2022, and set forth below in this judgment entry.

(February 9, 2023 Judgment.)

**{¶27}** The trial court said it considered the objections and conducted the necessary independent review of each. It also states it was adopting the magistrate's decision as its own before reciting it.

**{¶28}** The requirement in Civ.R. 53 requiring a court to independently review a magistrate's report and the objections does not require the court to explain why the court

Case No. 23 MA 0039

adopted the decision or overruled the objections. *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 11; *Greene v. Cincinnati*, 1st Dist. Hamilton No. C-120079, 2012-Ohio-5393, ¶ 11.

{¶29} Because the trial court's judgment satisfies Civ.R. 53(D)(4)(d), this aspect of Bugno's first assigned error lacks merit.

{¶30} Additionally, Bugno contends the trial court erred by finding the statute of frauds is inapplicable to the parties' oral agreement. At the beginning of trial, Bugno moved for dismissal of Stiles' claims based on the statute of frauds, which the trial court overruled.

{¶31} Bugno claims the parties' agreement for Bugno to pay Stiles $23,000 is unenforceable under the statute of frauds for two reasons. First, she claims it is a promise to pay the debt of another and is thus unenforceable since it was not in writing and signed by her. Second, she claims their oral agreement is unenforceable under the statute of frauds because it is not capable of being performed within one year.

{¶32} The application of the statute of frauds is a question of law for the court to decide when the facts are not disputed. *Essig v. Blank*, 2021-Ohio-2602, 176 N.E.3d 113, ¶ 6 (2nd Dist.), *citing Willoughby Supply Co. v. Inghram*, 2015-Ohio-952, 30 N.E.3d 230, ¶ 22 (11th Dist.). We review issues of law de novo and without deference to the trial court's decision. *Henderson v. Haverfield*, 7th Dist. Harrison No. 21 HA 0005, 2022-Ohio-2194, ¶ 45. Regarding issues of fact, however, we employ the manifest weight standard of review in appeals from bench trials. *St. Clairsville Pointe, Inc. v. Musilli*, 2022-Ohio-2646, 193 N.E.3d 1114, ¶ 47 (7th Dist.). "If the evidence is susceptible to more than one interpretation, then we must construe it consistently with the lower court's judgment." *Id.*

{¶33} Ohio's statute of frauds is codified in Chapter 1335 of the Ohio Revised Code. The statute of frauds requires certain contracts to be in writing. R.C. 1335.05 states in part:

> No action shall be brought whereby to charge the defendant, upon a special promise, *to answer for the debt, default, or miscarriage of another person*; * * * *or upon an agreement that is not to be performed within one year from the making thereof*; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by

the party to be charged therewith or some other person thereunto by him or

her lawfully authorized.

(Emphasis added.)

**{¶34}** "Agreements that do not comply with the statute of frauds are unenforceable." *Qutifan v. Shafiq*, 2016-Ohio-4555, 70 N.E.3d 43, ¶ 13 (10th Dist.), citing *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923 (1938). The purpose of the statute of frauds is to ensure that transfers of real property are reliable and to discourage fraudulent claims. *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 348, 476 N.E.2d 388 (8th Dist.1984).

**{¶35}** First, we disagree with Bugno's argument that this is an oral agreement or promise to answer for the debt of another. As detailed in the statement of facts, Stiles filed his complaint seeking repayment for a debt he already paid of another. He sued Bugno to get his money back after he paid her auto loan in full, and she agreed to repay him. Had Bugno sued Stiles seeking to enforce his promise to pay off her car loan, this arrangement would have been a "promise, to answer for the debt * * * of another person * * *." *Id.* It is not. Thus, this argument lacks merit.

**{¶36}** Bugno also challenges the parties' agreement as violating the "not to be performed within one year" provision of the statute of frauds. The trial court addressed this issue and found:

> The statute of frauds does not apply when there is no evidence presented indicating the contract had terms relating to time for performance and it was possible to complete the contract within one year. The statute of frauds is only concerned with whether it is possible to complete the terms of the agreement within one year, not as whether completion was likely.

(Citation omitted.) (February 9, 2023 Judgment.)

**{¶37}** Ohio courts have strictly construed the "not to be performed within one year" provision of the statute of frauds. The rule only applies to agreements which, by their terms, cannot be fully performed within a year. It does not apply and does not invalidate or make unenforceable agreements that by the terms *could be* performed within a year. *Nonamaker v. Amos*, 73 Ohio St. 163, 172-175, 76 N.E. 949 (1905); *Sherman v. Haines*, 73 Ohio St.3d 125, 127, 652 N.E.2d 698 (1995).

{¶38} The Ohio Supreme Court in *Sherman v. Haines*, held in pertinent part: "where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds." *Id. Sherman* also quoted Corbin on Contracts to clarify its holding:

"[i]f a promise is so worded that it cannot be fully performed according to its own terms within one year, it is the kind of promise to which the one-year provision may be applicable. This may be so because the promise requires performance until a date more than a year away * * * or such a number of periodical performances as total more than a year. * * * "

*Id.* at 129, quoting 2 Corbin on Contracts (1950)*,* 534-535, Section 444. Upon applying the foregoing, *Sherman* held:

In this case, the alleged oral agreement provided that appellant would "pay the $3,000.00 debt in monthly installments of $25.00." By its express terms, the agreement necessarily required one hundred twenty months (or ten years) of installment payments. These terms are neither indefinite nor based upon a contingency. The agreement made no provision for the possibility of an early payoff. Having been entirely oral, the agreement violated R.C. 1335.05.

*Id.* at 129.

{¶39} In *Manshadi v. Bleggi*, 2019-Ohio-1228, 134 N.E.3d 695, ¶ 54 (7th Dist.), this court found the parties' oral agreement violated the statute of frauds. The agreement there involved an initial agreement for Bleggi to repay a debt in one lump sum, but he was unable to fulfill this obligation. Thus, the parties agreed Bleggi would make monthly payments in the amount of either $3,000 or $4,000. The repayment continued for three years. We found the modification precluded the contract from being completed in one year, and as such, we found the statute of frauds applicable. Because it was not in writing, it was unenforceable. *Id*. at ¶ 54.

{¶40} However, in *Ford v. Tandy Transp., Inc.*, 86 Ohio App.3d 364, 382, 620 N.E.2d 996, (4th Dist.1993), the Fourth District reviewed testimony about the parties' oral agreement to determine if there was evidence regarding whether the contract there was

for a specific term.  Since there was no evidence showing the agreed upon terms of the parties' agreement, *Tandy* found "there was a possibility in law and fact that Tandy's performance might end within one year of the parties' contract."  Thus, there was no violation of the statute of frauds.  *Id.*

**{¶41}** And in *Hosterman v. French*, 7th Dist. Columbiana No. 13 CO 25, 2014-Ohio-5855, ¶ 16-17, this court relied on *Tandy* and found the oral agreement there was not violative of the statute of frauds since "the alleged contract was capable of performance within one year."  We explained:

> The Statute of Frauds does not apply when there is no evidence presented indicating the contract had terms relating to time for performance and it was possible to complete the contract within one year.  *Kime Design, L.L.C. v. Aouthmany,* 6th Dist. No. L-11-1162, 2012-Ohio-3183, ¶ 25.  A promise that is not likely to be performed within a year, and that in fact is not performed within a year, is still not within the Statute of Frauds if at the time the agreement is entered into, there is a possibility in law and in fact that full performance may be completed within a year.  *Ford v. Tandy Transp., Inc.,* 86 Ohio App.3d 364, 382, 620 N.E.2d 996 (1993).

*Id.* at ¶ 17.

**{¶42}** The trial testimony reveals the following.  Bugno did not testify about the parties' agreed upon terms of the repayment or the way by which she agreed to repay Stiles.

**{¶43}** As stated, Stiles testified his mother was going to "pay him back as quickly as possible." (Trial Tr. 17.)  He explained she said she would make payments to him, the same payments she would have made to the lender.  Stiles did not testify as to what amount they agreed on, if any.  A copy of the loan payoff document shows the total monthly loan payment was $787.55, consisting of $510.02 in principal and $277.53 in interest.  (Exhibit PX-4.)  Bugno made payments to him in two different amounts, $1,050 and $2,050.  (Trial Tr. 25.)  Stiles also testified: "She said that she would make the same payments that she basically would have to pay to them to me, and if she could pay it off quicker, then, you know, said, * * * like she made me an extra payment in - -." (Trial Tr. 27.)

{¶44} Romeo testified he heard Bugno state she would get the money "back to [Stiles] as quickly as she could. There was no set time or anything like that." When asked if there was a "set amount" for repayment, Romeo said "I don't recall exactly what it was." (Trial Tr. 76.)

{¶45} Moreover, Bugno paid him $1,050 in June, July, and October of 2020, but did not pay Stiles in the month of September. And she paid him $2,050 in the month of August. There is nothing demonstrating she was precluded from paying the full amount early or within a year. Moreover, Stiles' statement that she promised to pay it off "as quickly as possible" and her payments of varying amounts tend to show there was no agreement about her timeline for repayment.

{¶46} While the testimony shows Bugno generally promised to pay Stiles the same amount she had been paying the lender, the payments actually made were more than the monthly loan payment amounts. Further, both Stiles and Romeo recalled Bugno saying she would pay him back as quickly as possible. This shows early repayment was possible. The terms of repayment here were indefinite because there was no evidence showing a specific agreed upon amount or frequency of the parties' agreement.

{¶47} Thus, the parties' agreement does not violate the statute of frauds because the payoff terms were indefinite and worded in such a way that the agreement could have been performed within one year. Thus, we find this argument lacks merit.

{¶48} Additionally, we conclude that the trial court's factual finding that the parties agreed to 23 payments of $1,000 each is unsupported by the evidence. There is no evidence showing that a specific number of payments were agreed upon.

{¶49} To the contrary, Bugno told Stiles she would pay him the amount she was paying the lender, which was shown to be $787.55 per month, yet she made payments in the amounts of $1,050 and $2,050. There was no testimony or other evidence showing the parties agreed that Bugno would make 23 equal payments. Because this finding of fact is not supported by record evidence, we find error. The trial court erred in making this finding as it is not supported by testimony or other evidence. Notwithstanding this erroneous finding, the court's conclusion that the statute of frauds is inapplicable is correct based on the evidence at trial.

{¶50} This assigned error lacks merit and is overruled.

Case No. 23 MA 0039

<u>Failure to Enforce Local Rules</u>

**{¶51}**  Bugno's second assignment of error asserts:

"The trial court erred in denying Defendant leave to file an amended answer and counterclaim based upon a putative statement that the Court had set the matter for trial on January 23, 2022, when no such entry appears in the record and no disclosure was made by withdrawing in accordance with Local Rule 12 and that withdrawal of counsel was permitted without such a disclosure and without the defendant having any opportunity to respond to the motion."

**{¶52}**  Bugno identifies three claimed trial court errors that she alleges denied her a fair trial.  First, Bugno claims the trial court erred by allowing her first attorney to withdraw without ensuring her counsel complied with Mahoning County Local Rule 12.  Second, she contends the court erred by allowing Stiles to file his pretrial brief one day late.  And third, she claims the court erred by permitting Bugno's counsel to make an oral motion to approve the late filing at trial, instead of in a written motion.

**{¶53}**  As for Bugno's first sub-argument, she claims the trial court erred by failing to enforce Mahoning County Loc.R. 12, "Withdrawal of Counsel," and this failure resulted in the court denying her leave to file a counterclaim.  We disagree.

**{¶54}**  Trial courts have broad discretion when addressing a motion to amend the pleadings.  *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illuminating Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991).   Thus, we do not substitute our judgment for the trial court's but may reverse only when the trial court's decision is unreasonable, arbitrary, or unconscionable.  *Id.* quoting *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

**{¶55}**  Motions to amend pleadings are governed by Civ.R. 15(A), which states in part:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its

pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

Here, Bugno's motion to amend was well beyond the time for doing so under the rule, and she did not obtain Stiles' counsel's consent. Thus, Bugno needed leave of court. *Id.*

**{¶56}** Further, Mahoning County Loc.R. 12, "Withdrawal of Counsel," states:

(A) An attorney desiring to withdraw from representation of a client shall file a motion to withdraw stating the reasons for the withdrawal. The motion shall include the last current address and phone number of the client and a certification by the attorney that the following conditions have been met:

(1) Notice has been given to the client that the attorney has filed a motion to withdraw;

(2) Notice has been given to the client advising the client of all orders and all upcoming assignment dates;

* * *

(B) No attorney shall be permitted to withdraw from a case later than twenty-one days prior to a trial or dispositive hearing except in extraordinary circumstances, or unless required pursuant to the Code of Professional Responsibility.

**{¶57}** As stated, Bugno filed an answer with her first attorney. (April 9, 2021 Answer.) Following an unsuccessful mediation in January of 2022, Bugno's second attorney filed a notice of appearance. (February 11, 2022 Notice of Appearance.) Four days later, her first named attorney moved to withdraw as counsel of record indicating a lack of communication, which the trial court granted. (February 16, 2022 Order.)

**{¶58}** Bugno subsequently moved the trial court for leave to file an amended answer and counterclaim on May 24, 2022. The trial court denied her motion because the case had been pending for 16 months and the trial date was set for June 22, 2022. The court stated in its judgment, "all parties have been aware of the trial set for June 22, 2022 since January 31, 2022." (June 2, 2022 Judgment.)

**{¶59}** We agree that Bugno's initial attorney failed to follow Local Rule 12 when he did not certify in his motion that he had informed his client of "all orders and all upcoming assignment dates" in his motion to withdraw. Yet, his motion to withdraw was

predicated on Bugno's retention of a new attorney, who had already entered an appearance. Further, Bugno's new attorney did not move for leave to amend her complaint in February of 2022 when he was retained, but did so three months later. The trial court subsequently overruled her request to file an amended answer and counterclaim.

**{¶60}** Although the fact that a bench trial had been scheduled may not have been evident from the public docket when Bugno's new counsel entered an appearance, the fact that the case had been pending for more than a year was apparent.

**{¶61}** Further, a review of Bugno's motion for leave shows her proposed counterclaim sought to add claims for defamation and telecommunications harassment. Her motion in support states Bugno learned about the facts supporting these claims during discovery in his case. As the trial court found, the case had been pending for sixteen months. The parties had already conducted discovery and participated in mediation. Further, the nature of her alleged claims do not tend to show they were compulsory, such that she would be precluded from raising them. *See Rettig Enterprises, Inc. v. Koehler*, 68 Ohio St.3d 274, 277, 626 N.E.2d 99 (1994), citing Civ.R. 13(A).

**{¶62}** Thus, we find no abuse of discretion. There is nothing indicating the trial court's decision is unreasonable, arbitrary, or unconscionable. This sub-argument is overruled.

**{¶63}** Bugno asserts in her second and third sub-arguments the court erred by allowing Stiles to file his pretrial brief one day late and also by granting Stiles' oral motion to allow the late filing at the beginning of the bench trial.

**{¶64}** Bugno takes issue with Stiles' counsel's failure to comply with and the court's failure to enforce Mahoning County Civil Local Rule 4, which states in part:

> (C) Seven days before trial, counsel shall prepare a pre-trial statement which shall be submitted to the Court, unless the pretrial statement is waived by the Court.
>
> * * *
>
> (E) In the event that a party fails to provide a pretrial statement, where that statement is not excused by the Court, the Court may impose sanctions against the party for its failure to comply with this rule.

**{¶65}** It is undisputed that Stiles' pretrial statement was submitted one day late— six days before trial instead of the seven. The magistrate addressed this issue on the record during the proceedings when Stiles' counsel moved to have the court admit it as untimely. Counsel explained his filing was late because he had the notification alert incorrectly added on his calendar. The magistrate allowed the late filing and noted at the beginning of trial, "I don't believe it affects me or the decision I would make or the evidence in this case." (Trial Tr. 13.)

**{¶66}** Bugno claims the trial court judge, and not the magistrate, was the only individual permitted to authorize Stiles' untimely motion. She also claims the late filing is not permissible absent a showing of excusable neglect.

**{¶67}** Mahoning County Local R. 16 states: "These local rules are applicable to all civil proceedings in the Mahoning County Common Pleas Courts unless otherwise specifically ordered in an individual case by written judgment entry of the Judge presiding over such case, or by amendment to these rules."

**{¶68}** Appellant asserts this rule means a magistrate lacked the authority to address Stiles' oral motion to accept his pretrial statement one day late. We disagree.

**{¶69}** Civ.R. 53(C)(1) "Authority" states: "To assist courts of record and pursuant to reference under Civ. R. 53(D)(1), magistrates are authorized, subject to the terms of the relevant reference, to do any of the following * * * (a) Determine any motion in any case * * *."

**{¶70}** Here, the trial was being heard by the magistrate. It is illogical to conclude the magistrate was not permitted to address Stiles' oral motion about a procedural issue raised while presiding over the matter. Further, it is evident the pretrial statement requirement is designed to apprise the opposing party and the court about who each party intends to call as a witness, what legal and factual issues may arise during trial, how long the trial may take, and whether settlement is still possible, among other things. It is not evidence and is not filed with the clerk of courts.

**{¶71}** Although Bugno generally contends she was prejudiced as a result of Stiles' untimely pretrial statement, she does not identify specific prejudice resulting from the one-day delay. Bugno does not claim Stiles identified new evidence or a surprise witness for the first time in this late statement. She does not contend she was unable to prepare for

trial because of the delay. Thus, we cannot find the trial court abused its discretion by allowing the untimely pretrial statement. This argument lacks merit.

**{¶72}** To the extent Bugno claims Civ.R. 6(B) required Stiles to show excusable neglect, we disagree. Civ.R. 6 states in part:

> (A) Time: Computation. In computing any period of time prescribed or allowed by these rules, *by the local rules of any court*, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. * * *
>
> (B) Time: Extension. *When by these rules* or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * * .

(Emphasis added.) Subsection (A) of Civ.R. 6 explicitly includes "these rules" and "the local rules of any court." By its terms, Civ.R. 6(B) does not apply to violations of local rules, but only to violations of the Ohio Rules of Civil Procedure.

**{¶73}** As for Bugno's allegation that the foregoing errors resulted in the denial of due process, we disagree.

**{¶74}** The party claiming a violation of a local rule when due process rights are implicated generally has the burden to show not only the trial court failed to comply with its local rule, but also that the party was prejudiced by that failure. *Wallner v. Thorne*, 189 Ohio App.3d 161, 2010-Ohio-2146, 937 N.E.2d 1047, ¶ 21 (9th Dist.), *citing In re J.B.,* 9th Dist. Medina Nos. 03CA0024-M and 03CA0025-M, 2003-Ohio-4786, ¶ 16.

**{¶75}** Bugno generally asserts she had judgment rendered against her because of the trial court's errors. She does not, however, direct our attention to any specific prejudice as a result of the trial court's alleged failure to abide by the local rules. Thus, we find Bugno's due process argument lacks merit.

**{¶76}** For the foregoing reasons, Bugno's second assignment of error lacks merit in its entirety.

<u>Unjust Enrichment Claim</u>

**{¶77}** Bugno's third assigned error contends:

"The trial court erred in finding that Defendant enjoyed the benefit from the Plaintiffs [sic] alleged payment of a debt of her husband, merely because she drove the car that was subject to a lien which the Plaintiff allegedly paid off, and she drove the car before and after the alleged loan was paid off."

**{¶78}** In this assignment of error, Bugno challenges the trial court's findings that tend to support Stiles' claim for unjust enrichment. Stiles asserted a claim in his complaint for unjust enrichment, and the trial court made certain findings that tend to support the claim. However, the trial court did not address the actual merits of Stiles' unjust enrichment claim and did not award damages for unjust enrichment. Thus, any argument here is moot since it has no practical significance on the existing controversy. *Warner v. Palmer*, 7th Dist. Belmont No. 18 BE 0012, 2019-Ohio-4078, ¶ 28; App.R. 12(A)(1)(c).

**{¶79}** Accordingly, this assigned error is meritless.

<u>Witness Credibility</u>

**{¶80}** Bugno's fourth assignment of error asserts:

"The trial court erred in finding that the Plaintiff paid because he was on Medicaid which prohibited him from having such sums in a bank account, and there was no evidence that the account making payments belonged to Plaintiff."

**{¶81}** This assignment attacks the credibility of the plaintiff and in essence the court's judgment as against the manifest weight of the evidence. Bugno contends Stiles and his witness are unreliable since they have substantial criminal histories and the propensity to disregard the law. Bugno also urges us to find that because Stiles was a Medicaid recipient, he should not have had $23,000 to loan Bugno, absent fraud.

**{¶82}** Appellate courts "should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. * * * The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal * * *." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984); *accord Andes v. Winland*, 2017-Ohio-766, 85 N.E.3d 1098, ¶ 31 (7th Dist.).

**{¶83}** The credibility of the witnesses is primarily for the finder of fact because the trial judge is best able to view the witnesses and observe their demeanor, including voice inflections and body language. *Seasons Coal Co.*, *supra*, at 80, 461 N.E.2d 1273. Both Bugno and Stiles testified as to their competing versions of events. Stiles claims he paid off this loan for his mother because she was having difficulty with money at the time and the automobile loan had a very high interest rate. Bugno testified she would repay him.

**{¶84}** Consistent with her credibility arguments, Bugno elicited testimony and presented evidence about Stiles' and Romeo's criminal histories during trial. There was also evidence and argument that Stiles should not have been in a position to afford the amount of money he allegedly loaned Bugno, absent some sort of fraud, because he was receiving Medicare benefits.

**{¶85}** This evidence was before the court for the trier of fact to assess. Because the trial court was in a better position to observe the demeanor of the witnesses during their testimony, we will not substitute our judgment for that of the trial court. Accordingly, this assigned error lacks merit.

Conclusion

**{¶86}** Based on the foregoing, we conclude that each of Appellant's assignments of error lack merit and are overruled. We affirm the decision of the trial court and lift the stay.

Waite, J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed and the stay is lifted. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**